**William and Dorothy LONG,
Petitioners,**

v.

**WAYNE TOWNSHIP ASSESSOR,
Respondent.**

. No. 49T10–0404–TA–20.

Tax Court of Indiana.

Jan. 28, 2005.

Gary M. Timpe, Attorney at Law, Indianapolis, IN, Attorney for Petitioners.

Steve Carter, Attorney General of Indiana, John D. Snethen, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

## ORDER ON THE PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

FISHER, J.

The Petitioners, William and Dorothy Long (the Longs), appeal from a final determination of the Indiana Board of Tax Review (Indiana Board) valuing their real property for the March 1, 2002 assessment date. The matter is currently before the Court on the parties' cross-motions for summary judgment. The sole issue for this Court's review is whether the Longs made a prima facie showing that their assessment was erroneous.

## FACTS AND PROCEDURAL HISTORY

The Longs own a multi-family, row-type dwelling at 32–34 North Sheffield, India-

napolis, Indiana. For the 2002 assessment, the Wayne Township Assessor (Assessor) assigned the Longs' property an assessed value of $87,800 (land at $5,400 and the improvement at $82,400).

Believing this value to be too high, the Longs appealed the assessment to the Indiana Board. On December 16, 2003, the Indiana Board conducted a hearing on the Longs' appeal. On March 15, 2004, the Indiana Board issued a final determination affirming the assessment.

The Longs subsequently filed an appeal with this Court. On July 27, 2004, the Indiana Board filed a motion for summary judgment. The Longs filed a cross-motion for summary judgment on September 27, 2004.[1]

On November 23, 2004, the parties waived a hearing on their motions for summary judgment. Instead, the parties requested that the matter be resolved on the basis of their briefs. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ This Court gives great deference to final determinations of the Indiana Board. *Wittenberg Lutheran Vill. Endowment Corp. v. Lake County Prop. Tax Assessment Bd. of Appeals*, 782 N.E.2d 483, 486 (Ind. Tax Ct.2003), *review denied*. Consequently, the Court will reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE ANN. § 33–26–6–6(e)(1)–(5) (West Supp.2004).

■ The burden of demonstrating the invalidity of an Indiana Board final determination rests with the challenging party. *See Osolo Township Assessor v. Elkhart Maple Lane Assocs., L.P.*, 789 N.E.2d 109, 111 (Ind. Tax Ct.2003). To meet this burden, the challenging party must present a prima facie case, or one in which the evidence is "sufficient to establish a given fact and which if not contradicted will remain sufficient." *Lacy Diversified Indus., Ltd. v. Dep't of Local Gov't Fin.*, 799 N.E.2d 1215, 1218–19 (Ind. Tax Ct.2003) (citation omitted). When presenting a prima facie case, the challenging party must first offer probative evidence concerning the alleged error. *See King Indus. Corp. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 338, 343 (Ind. Tax Ct.1998); *Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1119 (Ind. Tax Ct.1998), *review denied*. Only after such evidence has been produced does the burden shift to the opposing party to rebut the evidence. *See Loveless Const. Co. v. State Bd. of Tax Comm'rs*, 695 N.E.2d 1045, 1049 (Ind. Tax Ct.1998), *review denied*.

## DISCUSSION

The Longs contend that the Indiana Board's final determination is not sup-

---

1. Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See* Ind. Trial Rule 56(C). *See also W.H. Paige & Co. v. State Bd. of Tax Comm'rs*, 732 N.E.2d 269, 270 (Ind. Tax Ct.2000). Cross motions for summary judgment do not alter this standard. *W.H. Paige*, 732 N.E.2d at 270.

ported by substantial evidence. More specifically, they contend that the Indiana Board ignored their evidence that demonstrated their property's assessed value greatly exceeded its market value. The Assessor contends, on the other hand, that the Longs' evidence did not have any probative value and therefore they failed to make a prima facie case. As a result, the Assessor asserts that the Indiana Board's final determination must be affirmed.

Under Indiana's assessment system, real property is assessed on the basis of its "true tax value." *See* IND.CODE ANN. § 6–1.1–31–6(c) (West Supp.2004). "True tax value" is defined as "[t]he market value-in-use of a property for its current use, as reflected by the utility received by the owner or a similar user, from the property." 2002 REAL PROPERTY ASSESSMENT MANUAL 2 (2001) (hereinafter, Manual) (incorporated by reference at IND. ADMIN. CODE tit. 50, r. 2.3–1–2 (2002 Supp.)). In turn, a property's market value-in-use "may be thought of as the ask price of property by its owner, because this value ... represents the utility obtained from the property, and the ask price represents how much utility must be replaced to induce the owner to abandon the property." [2] *Id.* (footnote added).

Indiana's assessment regulations further explain that a property's market value-in-use may be calculated through the use of several approaches, all of which have been used in the appraisal profession. *Id.* at 3. More specifically:

The first approach, known as the *cost approach*, estimates the value of the land as if vacant and then adds the depreciated cost new of the improvements to arrive at a total estimate of value. The second approach, known as the *sales comparison approach*, estimates the total value of the property directly by comparing it to similar, or comparable, properties that have sold in the market. The third approach, known as the *income approach*, is used for income producing properties that are typically rented. It converts an estimate of income, or rent, the property is expected to produce into value through a mathematical process known as capitalization.[3]

*Id.* (footnote added).

When using the sales comparison approach to contest an assessment, a taxpayer must offer probative evidence regarding the market value-in-use of the subject property, as well as the market value-in-use of comparable properties. For instance, a taxpayer's evidence may include "actual construction costs, sales information regarding the subject or comparable properties, appraisals that are relevant to the market value-in-use of the property, and any other information compiled in accordance with generally accepted appraisal principles." *Id.* at 5. Nevertheless, such data must be reliable, reasonably comparable based on accepted appraisal standards, readily available to the assessor at the time the assessment was made, and reflect the property's January 1, 1999, replace-

**2.** Nevertheless, "[i]n markets in which sales are not representative of utilities, either because the utility derived is higher than indicated sale prices, or in markets where owners are motivated by non-market factors such as the maintenance of a farming lifestyle even in the face of a higher use value for some other purpose, true tax value will not equal value in

exchange." 2002 REAL PROPERTY ASSESSMENT MANUAL 2 (2001) (hereinafter, Manual) (incorporated by reference at IND. ADMIN. CODE tit. 50, r. 2.3–1–2 (2002 Supp.)).

**3.** "All three of these approaches, when properly processed, should produce approximately the same estimate of value." *Id.* at 3.

ment cost.[4] *See id.* at 4–5 (footnote added).

To support their claim that their assessment was improper, the Longs submitted the following evidence at the administrative hearing: 1) approximately 200 pages of documentation on purportedly comparable properties with sales prices ranging between $35,500 and $64,200; 2) a policy declaration from Auto–Owners Insurance indicating that for the period of February 12, 2003 through February 12, 2004, the Longs' property was insured for $56,000; and 3) an independent fee appraisal that valued the property, as of December 10, 2003, at $59,000. In examining this evidence, however, the Court determines that the Longs have not met their burden of proof.

### 1. Sales Data on Comparable Properties

■ The Longs submitted an extensive amount of documentation on purportedly comparable properties with sales prices ranging between $35,500 and $64,200. More specifically, the Longs submitted three pages of handwritten notes listing 16 separate properties with their respective addresses, owners' names, dates of sale, sale prices, and location in comparison to the subject property. (Cert. Admin. R. at 46–48.) In addition, the Longs submitted 131 pages of property listings from the Metropolitan Indianapolis Board of Realtors (MIBOR) website.[5]

While this was a good start, the Longs made a fatal error when they presented this evidence to the Indiana Board. Indeed, they provided little, if any, comparison of these allegedly comparable properties to their own. For instance, with respect to the list of 16 properties, the Longs' handwritten notes merely included comments such as "similar to subject[;]" "this property is … larger than subject [in that it] has four units and detached garage[;]" "similar home[;]" "condition not as good as subject[;]" and "same area[,] smaller home[.]" (Cert. Admin. R. at 46–48.) With respect to the other 131 pages of evidence printed from the MIBOR website, the Longs provided this hand-written statement: "[w]e drove the area street by street to do our research. We have many more sheets of listings to bear out our position, [but] time prevents our reviewing them individually. However[,] we are presenting them to you for your consideration." (Cert. Admin. R. at 198.) The Longs' oral testimony provides little more. (*See* Cert. Admin. R. 262–63, 271–73.)

■ A taxpayer's statements that another property "is similar" or "is comparable" are nothing more than conclusions. Conclusory statements do not constitute probative evidence. *Whitley Prods., Inc.,* 704 N.E.2d at 1119. Rather, specific reasons must be provided as to why a taxpayer believes a property is comparable. *Lacy Diversified Indus., Ltd.,* 799 N.E.2d at 1221.

The Longs argue, in turn, that "[t]he whole of the evidence submitted by the Petitioners gives the [Indiana Board] specific reasons of comparability, and the [Indiana Board] is not limited to make [its]

---

**4.** "[A]ssessing officials are faced with the responsibility of valuing all properties within their jurisdictions … and often times do not have the data or time to apply all three approaches to each property." *Id.* As a result, the cost approach has historically been used in mass appraisal by assessing officials since data is available to apply it to all properties within a jurisdiction.… [R]eplacement cost estimates the cost of a physical structure with similar utility. This estimate of cost should be closely aligned with value-in-use. *Id.*

**5.** www.mibor.com

determination only by oral testimony[.] The breadth of sales data in the record presents enough specific evidence." (Pet'rs Mem. of Law in Supp. of [Their] Mot. and in Opp'n of Resp't Mot. for Summ. J. at 4.) In addition, they claim that "[i]t is commonly recognized . . . in the residential real estate profession[ ] that two similar sized, two-bedroom, two-bath residential dwellings located in the same neighborhood will sell, in an arms-length transaction, for similar prices. Using this methodology, [our] statements . . . were not merely 'conclusory'[.]" (Pet'rs Mem. of Law in Supp. of [Their] Mot. and in Opp'n of Resp't Mot. for Summ. J. at 5.) The Longs miss the point.

■ As previously stated, the party challenging an Indiana Board final determination bears the burden of demonstrating its invalidity. *Elkhart Maple Lane Assocs., L.P.*, 789 N.E.2d at 111. As part of making its prima facie case, "[i]t is the taxpayer's duty to walk the [Indiana Board and this] Court through every element of [its] analysis." *Clark v. Dep't of Local Gov't Fin.*, 779 N.E.2d 1277, 1282 n. 4 (Ind. Tax Ct.2002). In other words, a taxpayer cannot "generically claim without explanation that [it] made a prima facie case then [ ] cite to large swathes of the record as though the evidence speaks for itself." *Id.* Here, it was not the Indiana Board's responsibility to review all the documentation submitted by the Longs to determine whether those properties were indeed comparable—that duty rested with

the Longs. Thus, the Longs were responsible for explaining to the Indiana Board the characteristics of their own property, how those characteristics compared to those of the purportedly comparable properties, and how any differences affected the relevant market value-in-use of the properties. The record is devoid of such explanation, and therefore the Longs' evidence carries no probative value.

2.   Insurance Policy and Appraisal

■ At the administrative hearing, the Longs also presented two other documents to support their claim. First, they presented an insurance policy indicating that for the period from February 12, 2003 to February 12, 2004, their property was insured for $56,000. Second, the Longs presented an independent fee appraisal that indicated that, as of December 10, 2003, their property was appraised at $59,000. Again, the Longs started out on the right course, but there is a problem with respect to these documents that negatively affect their probative value.[6]

Indiana's assessment regulations state that for the 2002 general reassessment, a property's assessment was to reflect its value as of January 1, 1999. *See* Manual at 4. The insurance policy and the independent appraisal, however, indicate property values for 2003 and 2004. Consequently, the Longs were required to provide some explanation as to how these values demonstrate, or are relevant to, the subject property's value as of Janu-

---

6.   The Assessor argues that even if the Longs had made such an explanation, these documents carry no probative value for yet another reason. More specifically, the Assessor explains that Indiana's assessment regulations provide that when contesting an assessment, a taxpayer may only use that data that was "readily available" to the assessing official *at the time the assessment was made*. (Resp't Br. on its Mot. for Summ. J. at 6-7 (citing Manual at 4-5).) Consequently, the Assessor

argues that because the Longs' 2003/2004 insurance policy and the 2003 appraisal did not exist at the time the assessment in this case was made (ie., March 1, 2002), the Longs cannot use these documents in their assessment challenge. (Resp't Br. on its Mot. for Summ. J. at 6-7.) The Court disagrees.

The manual defines "readily available," in relevant part, as "reasonably imputed to be information that the assessor should know is relative to the assessment, that the assessor is

ary 1, 1999. Because the Longs provided no such explanation, these documents likewise do not carry any probative value.

## CONCLUSION

For the aforementioned reasons, the Longs have not made a prima facie showing that their assessment is in error. Consequently, the Court AFFIRMS the Indiana Board's final determination. Summary judgment is thereby GRANTED in favor of the Assessor and AGAINST the Longs.

---

aware exists, and could have been accessed with reasonable ease or that the assessor could have availed himself/herself of with reasonable ease." Manual at 5. Consequently, "any information held, possessed or controlled by a taxpayer *that is not furnished to the assessor prior to the assessment date, or otherwise made available and known to the assessor, cannot be considered readily available to the assessor.*" Manual at 5 (emphasis added). Nevertheless, Indiana Code § 6-1.1-15-16 states that "[n]otwithstanding any provision in the ... Manual ... a county property tax assessment board of appeals or the Indiana [B]oard shall consider all evidence relevant to the assessment of real property *regardless of whether the evidence was submitted to the township assessor before the assessment of the property.*" IND. CODE ANN. § 6-1.1-15-16 (West Supp. 2004-2005) (eff. 3-28-02). Consequently, under the clear meaning of the statute, the Longs were not prohibited from submitting the insurance policy and the appraisal on the sole basis that they were not submitted to the Assessor prior to the assessment.