Thomas C. O'DONNELL and Kathy
L. O'Donnell, Petitioners,

v.

DEPARTMENT OF LOCAL
GOVERNMENT FINANCE,
Respondent.

No. 49T10–0510–TA–79.

Tax Court of Indiana.

Sept. 21, 2006.

Thomas C. O'Donnell, Attorney At Law, Highland, IN, Attorney for Petitioners.

Steve Carter, Attorney General of Indiana, Jennifer E. Gauger, Dawn D. Cummings, Deputy Attorneys General, Indianapolis, IN, Attorneys for Respondent.

On APPEAL FROM A FINAL DETER-
MINATION OF THE INDIANA
BOARD OF TAX REVIEW

FISHER, J.

Thomas C. O'Donnell and Kathy L. O'Donnell (the O'Donnells) appeal the final determination of the Indiana Board of Tax Review (Indiana Board) upholding the Department of Local Government Finance's (DLGF) assessment of their residential real property for the 2002 tax year. While the O'Donnells raise several issues on appeal, the Court consolidates and restates them as: whether the O'Donnells made a prima facie case that their assessment is improper.

## FACTS AND PROCEDURAL HISTORY

The O'Donnells own a house in the Briar Ridge Country Club Subdivision (Briar Ridge) in Lake County, Indiana. Briar Ridge straddles the corporate line between the towns of Dyer and Schererville; thus, some of the lots in Briar Ridge are located in Dyer and others are located in Schererville. The O'Donnells reside on the Dyer side of Briar Ridge.

For the 2002 assessment, the DLGF valued the O'Donnells's property at $519,000 ($141,700 for land and $377,300 for improvements). Believing the assessment to be too high, the O'Donnells filed a Petition for Review with the Indiana Board (Form 139L) on April 29, 2004. In their Form 139L, the O'Donnells asserted that the DLGF improperly valued both their land and their house.

The Indiana Board held a hearing on the O'Donnells's Form 139L on October 7, 2004. On August 19, 2005, the Indiana Board issued its final determination in which it denied the O'Donnells's request for relief.

■ The O'Donnells filed an original tax appeal on October 1, 2005.[1] The Court heard the parties' oral arguments on June 23, 2006. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ This Court gives great deference to final determinations of the Indiana Board when it acts within the scope of its authority. *Wittenberg Lutheran Vill. Endowment Corp. v. Lake County Prop. Tax Assessment Bd. of Appeals,* 782 N.E.2d 483, 486 (Ind. Tax Ct.2003), *review denied.* Consequently, the Court will reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND. CODE ANN. § 33–26–6–6(e)(1)–(5) (West 2006).

■ The party seeking to overturn the Indiana Board's final determination bears the burden of proving its invalidity. *Osolo Twp. Assessor v. Elkhart Maple Lane Assocs. L.P.,* 789 N.E.2d 109, 111

---

1. In its Answer, the DLGF claimed that this Court lacked jurisdiction to decide the case because the O'Donnells did not timely file their administrative record. (Resp't Answer at 2.) Because the DLGF never discussed this issue in a subsequent motion to dismiss, its brief, or at oral argument, the Court deems the issue waived.

(Ind. Tax Ct.2003). In order to meet that burden, the party seeking reversal must have submitted, during the administrative hearing process, probative evidence regarding the alleged assessment error. *Id.* If that party meets its burden of proof and prima facie establishes that the Indiana Board's final determination is erroneous, the burden then shifts to the opposing party to rebut the challenging party's evidence. *See Meridian Towers E. & W. v. Washington Twp. Assessor,* 805 N.E.2d 475, 479 (Ind. Tax Ct.2003).

## DISCUSSION AND ANALYSIS

■ Under Indiana's assessment system, real property is assessed on the basis of its "true tax value." "True tax value" does not mean fair market value, but rather "[t]he market value-in-use of a property for its current use, as reflected by the utility received by the owner or a similar user, from the property[.]" 2002 REAL PROPERTY ASSESSMENT MANUAL (hereinafter, Manual) (incorporated by reference at IND. ADMIN. CODE tit. 50, r. 2.3–1–2 (2002 Supp.)) at 2. *See also* IND. CODE ANN. § 6–1.1.–31–6(c) (West 2006). In turn, a property's market value-in-use "may be thought of as the ask price of property by its owner, because this value . . . represents the utility obtained from the property, and the ask price represents how much utility must be replaced to induce the owner to abandon the property." [2] Manual at 2 (footnote added).

■ In order to determine a property's market value-in-use and, in turn, its true tax value, Indiana (through the now non-existent State Board of Tax Commissioners) has promulgated a series of guidelines that explain the valuation process for both land and improvements. *See* REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002—VERSION A (hereinafter, Guidelines) (incorporated by reference at 50 IAC 2.3–1–2), Books 1 and 2. Although the Guidelines provide general rules for assessing property, "situations may arise that are not explained or that result in assessments that may be inconsistent with th[e] definition [of market value-in-use]. In those cases[,] the assessor shall be expected to adjust the assessment to comply with this definition and may . . . consider additional factors . . . to accomplish th[at] adjustment." Manual at 2. Indeed,

[t]he purpose of [the Manual/Guidelines] is to accurately determine "True Tax Value" . . . not to mandate that any specific assessment method be followed. . . . No technical failure to comply with the procedures of a specific assessing method violates this rule *so long as the individual assessment is a reasonable measure of "True Tax Value[,]" and failure to comply with the [Guidelines] . . . does not in itself show that the assessment is not a reasonable measure of "True Tax Value[.]"*

IND. ADMIN. CODE tit. 50, r. 2.3–1–1(d) (2002 Supp.) (emphasis added).

■■ The overarching goal of Indiana's new assessment scheme is to ascertain a property's market value-in-use. Because assessors often operate under the constraints of limited time and resources,

2. "In markets in which sales are not representative of utilities, either because the utility derived is higher than indicated sale prices, or in markets where owners are motivated by non-market factors such as the maintenance of a farming lifestyle even in the face of a higher use value for some other purpose, true tax value will not equal value in exchange. In markets where there are regular exchanges, so that ask and offer prices converge, true tax value will equal value in exchange[.]" 2002 REAL PROPERTY ASSESSMENT MANUAL (hereinafter, Manual) (incorporated by reference at IND. ADMIN. CODE tit. 50, r. 2.3–1–2 (2002 Supp.)) at 2.

Indiana employs a mass appraisal system; therefore, the Guidelines provide a *starting point* for the assessor to determine a property's market value-in-use. *See* Manual at 3; Guidelines, Book 1 at 1. Thus, to the extent that an assessor may err in applying the Guidelines, the assessment will not necessarily be invalidated so long as the assessment accurately reflects the property's market value-in-use. *See* 50 IAC 2.3–1–1(d).

▪▪▪▪ A property's market value-in-use (i.e., true tax value), as ascertained through an application of the Guidelines is presumed to be accurate. *See* Manual at 6. Nevertheless, that presumption is rebuttable. Thus, a taxpayer

> shall be permitted to offer evidence relevant to the *fair market value-in-use* of the property to rebut such presumption and to establish the actual true tax value of the property so long as such information is consistent with the definition of true tax value provided in this [M]anual and was readily available to the assessor at the time the assessment was made. *Such evidence may include actual construction costs, sales information regarding the subject or comparable properties, appraisals that are relevant to the market value-in-use of the property, and any other information compiled in*

*accordance with generally accepted appraisal principles.*

*Id.* (emphases added). Thus, when a taxpayer chooses to challenge an assessment, he must show that the assessor's assessed value does not accurately reflect the property's market value-in-use.[3]

▪▪▪ In challenging their assessment, the O'Donnells have provided the Court with a list of alleged errors that occurred in valuing their land and house. For instance, they argue that because Briar Ridge is one subdivision, the same front foot rates and neighborhood factors should apply to both the Dyer and Schererville sides of the subdivision.[4] (Cert. Admin. R. at 71–72, 73–74; Pet'r Br. at 3–4 (footnote added).) Additionally, the O'Donnells argue that because their basement was unfinished in 1999, it should not have been included in the 2002 assessment.[5] (Cert. Admin. R. at 75 (footnote added).) The O'Donnells also argue that their house should have a grade of "B + 2" instead of an "A."[6] (Cert. Admin. R. at 71, 77–79 (footnote added).) Finally, the O'Donnells argue that because two allegedly comparable properties in their neighborhood were assessed differently than their property, their property's assessed value must be incorrect.[7] (Cert. Admin. R. at 70–71 (footnote added).)

---

3. This Court has previously stated that "the most effective method to rebut the presumption that an assessment is correct is through the presentation of a market value-in-use appraisal, completed in conformance with the Uniform Standards of Professional Appraisal Practice (USPAP)." *Kooshtard Prop. VI, LLC v. White River Twp. Assessor,* 836 N.E.2d 501, 506 n. 6 (Ind. Tax Ct.2005).

4. The DLGF assessed lots on the Dyer side of Briar Ridge at $1,200 per front foot and the Schererville side at $975 per front foot. (Cert. Admin. R. at 71.) Further, the DLGF applied a .87 neighborhood factor to Dyer and a .84 neighborhood factor to Schererville. (Cert. Admin. R. at 73.)

5. Further, the O'Donnells claim "a partially finished basement [ ] is not an appropriate addition to [include in] the living area of [a] home." (Pet'r Br. at 4.)

6. More specifically, O'Donnell testified that another house in the same neighborhood with "fancy" rooflines received a "B + 2." (Cert. Admin. R. at 78.) O'Donnell reasons that because his house does not have "fancy" rooflines, it should be graded, at the most, a "B + 2." (Cert. Admin. R. at 78–79.)

7. Indeed, O'Donnell testified that one of the comparable properties was built by the "same builder [with the] same plan" as their house, but only assessed at $450,300. (Cert. Admin.

Unfortunately, the O'Donnells have missed the point. As previously stated, the goal under Indiana's new assessment scheme is to ascertain the property's market value-in-use. The errors that the O'Donnells complain of focus solely on the methodology by which the DLGF determined the assessment. The O'Donnells have not demonstrated that the DLGF's assessment does not accurately reflect their property's market value-in-use.

The Court acknowledges that the O'Donnells have presented their 1997 construction costs and a 2003 appraisal to support their claim that their property's assessment of $519,000 is "incredulous." [8] (*See* Cert. Admin. R. at 30, 69, 72–73 (footnote added).) Nevertheless, Indiana's assessment regulations provide that a 2002 general assessment is to reflect a property's market value-in-use as of January 1, 1999. *See* Manual at 4; Guidelines, Book 1, Chapter 2 at 7. Thus, evidence regarding the value of property in 1997 and 2003 has no bearing upon 2002 assessment values without *some explanation* as to how these values relate to the January 1, 1999 value. *See 117 Republic Ltd. P'ship v. Brown Twp. Assessor*, 851 N.E.2d 399, 400 n. 2 (Ind. Tax Ct.2006); *Long v. Wayne Twp. Assessor*, 821 N.E.2d 466, 471–472 (Ind. Tax Ct.2005), *review denied.*

The O'Donnells suggest that the DLGF should have trended their 2003 appraisal value back to January 1, 1999, because it "promulgated [the] regulation for time adjustment of sales data in Lake County, Indiana. A simple calculation can be performed and is performed every day by assessors to determine the time dating of [an] appraisal back to the assessment date

of 2002 based on values in 1999." (Pet'r Br. at 5.) Indeed, Mr. O'Donnell stated to this Court: "I don't believe that I need to hold [the Indiana Board's] hands and show them what an appraisal of [$]480,000 means in 2003. The reasonable inferences that can be drawn from that are that it was probably less in 2002 and probably less in 1999." (Oral Argument Tr. at 10.)

This Court has repeatedly reminded taxpayers that as part of making a prima facie case, "it is the *taxpayer's duty* to walk the Indiana Board and this Court through every element of its analysis." *Fidelity Fed. Sav. & Loan v. Jennings County Assessor*, 836 N.E.2d 1075, 1082 (Ind. Tax Ct.2005) (*quoting Clark v. Dep't of Local Gov't Fin.*, 779 N.E.2d 1277, 1282 n. 4 (Ind. Tax Ct.2002)) (emphasis added). *See also Davidson Indus. v. Indiana State Bd. of Tax Comm'rs*, 744 N.E.2d 1067, 1071 (Ind. Tax Ct.2001). Therefore, *the O'Donnells* were required to trend forward the 1997 construction costs to a 1999 value and/or trend the 2003 appraisal back to its 1999 value. Because they did not, neither the O'Donnells's 1997 construction costs nor the 2003 appraisal carry any probative value. Accordingly, the O'Donnells have failed to make a prima facie case that their assessment is improper.

## CONCLUSION

For the above stated reasons, the Indiana Board's final determination is AFFIRMED.

---

R. at 70–71.) O'Donnell also testified that another comparable property "has the same features and was [assessed] at $480,000." (Cert. Admin. R. at 70.)

**8.** The O'Donnells explained that they completed construction of their house in 1997, at a cost of $405,000 (which included a cost of $60,000 for the land) and that in 2003 the property was appraised at $480,000. (*See* Cert. Admin. R. at 69, 72–73.)