PETITIONERS APPEARING PRO SE:
**GREGORY and CARMEN COOPER**
Huntertown, IN

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
ATTORNEY GENERAL OF INDIANA
**JESSICA E. REAGAN**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

**FILED**
Sep 09 2015, 10:17 am

CLERK
of the supreme court,
court of appeals and
tax court

| | | |
|---|---|---|
| GREGORY and CARMEN COOPER, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Cause No. 02T10-1405-TA-00019 |
| | ) | |
| ALLEN COUNTY ASSESSOR, | ) | |
| | ) | |
| Respondent. | ) | |

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**September 9, 2015**

WENTWORTH, J.

This case examines whether the Indiana Board of Tax Review erred in upholding Gregory and Carmen Cooper's 2012 land assessment. Upon review, the Court finds that the Indiana Board did not err.

## FACTS AND PROCEDURAL HISTORY

Gregory and Carmen Cooper own a single-family dwelling situated on 7.78 acres of land in the Shadow Creek subdivision in Huntertown, Indiana. Shadow Creek, with only twelve homesites ranging from four to eight acres each, "represents one of the

most exclusive private residential developments [] in Allen County[.]"  (Cert. Admin. R. at 123.)  The neighborhood provides "[l]andscaped entries, paved private streets, illuminated walking paths, woods and rolling terrain[,]" creating "a sense of tranquility unparalleled in the marketplace." (Cert. Admin. R. at 123.)

For the March 1, 2012 assessment, the Assessor assigned the Coopers' property an assessed value of $671,400 ($172,500 for land and $498,900 for improvements).  Believing their land assessment to be too high, the Coopers filed an appeal with the Allen County Property Tax Assessment Board of Appeals (PTABOA) on August 13, 2012.  On December 31, 2012, the PTABOA denied their appeal.  On February 14, 2013, the Coopers filed an appeal with the Indiana Board of Tax Review.  The Indiana Board conducted a hearing on the appeal on October 10, 2013.

During that hearing, the Coopers and the Assessor each made evidentiary presentations to the Indiana Board to support their respective positions.  For instance, the Coopers submitted a 2011 residential appraisal report for their property valuing the land at $62,240.  (See Cert. Admin. R. at 62, 64.)  The Assessor, on the other hand, submitted documentation indicating that between 2005 and 2011, five vacant lots in Shadow Creek were sold at prices between $20,000 to $23,000 per acre.[1]  (See Cert. Admin. R. at 105-121, 129.)  The Assessor also presented evidence indicating that two of those lots were relisted for sale in 2012 for $22,000 and $24,500 per acre.  (See Cert. Admin. R. at 124-25, 129.)  Finally, the Assessor presented evidence demonstrating

---

[1] The Assessor pointed out, however, that of these five sales, the two from 2010 and 2011 were the most relevant to the Coopers' 2012 assessment.  (See Cert. Admin. R. at 182.)  See also 50 IND. ADMIN. CODE 27-5-2(a) (2012) (see http://www.in.gov/legislative.iac/) (indicating that "[t]he county assessor shall use sales of properties occurring during a time period that is as short as possible and, ideally not more than fourteen (14) months before the March 1 assessment and valuation date").

that the last three remaining lots in Shadow Creek were being marketed at prices of approximately $25,000 per acre. (See Cert. Admin. R. at 123, 126-27, 129.) Consequently, the Assessor argued that the Coopers' land of assessment of $22,172 an acre was correct.

On April 8, 2014, the Indiana Board issued a final determination in which it found that the Assessor's evidence established a prima facie case that the Coopers' land assessment was proper.[2] The Indiana Board also determined that the Coopers failed to rebut that prima facie case because their appraisal was not credible and therefore carried no weight. More specifically, the Indiana Board explained that while the Coopers' appraisal indicated that its $62,240 land value reflected its 2007 purchase price, other evidence submitted during the hearing indicated that that purchase was not accomplished in an arms-length transaction. (See Cert. Admin. R. at 25 ¶¶ j-k (explaining that the evidence showed the Coopers "purchased" the land in 2007 from Gregory's mother, Carol, and that no money changed hands).) Accordingly, the Indiana Board affirmed the Coopers' 2012 land assessment of $172,500.

The Coopers initiated an original tax appeal on May 22, 2014. The Court heard oral argument on January 16, 2015 at Indiana Tech Law School in Fort Wayne, Indiana.[3] Additional facts will be supplied as necessary.

---

[2] The Indiana Board determined that pursuant to Indiana Code § 6-1.1-15-17.2(d), the Assessor bore the burden of proving the Coopers' 2012 assessment was correct. (Cert. Admin. R. at 19 ¶¶ 27-30.) That determination is not at issue in this case.

[3] The Court wishes to thank the staff and students at Indiana Tech Law School for their hospitality.

## STANDARD OF REVIEW

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). Accordingly, the Coopers must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial or reliable evidence. See IND. CODE § 33-26-6-6(e)(1), (5) (2015).

## DISCUSSION

On appeal, the Coopers argue that the Indiana Board's final determination must be reversed because it is contrary to law and it is not supported by substantial evidence. (See Oral Arg. Tr. at 17, 66; Pet'r Br. at 26.) More specifically, they explain that this Court has repeatedly told litigants who rely on comparable properties to either challenge or defend their assessments to: 1) identify the characteristics of the subject property; 2) explain how those characteristics compare to the characteristics of the purportedly comparable property; and 3) explain how any differences between the properties affect their relative market values-in-use. (See Pet'r Br. at 13 (citing O'Donnell v. Dep't of Local Gov't Fin., 854 N.E.2d 90, 95 (Ind. Tax Ct. 2006); Long v. Wayne Twp. Assessor, 821 N.E.2d 466, 471 (Ind. Tax Ct. 2005), review denied).) The Coopers maintain that the Assessor never provided any such explanation at the Indiana Board hearing and as a result, the Assessor's evidence was not probative and the Indiana Board erred in determining that the Assessor made a prima facie case. (See Pet'r Br. at 15-26.) (See also, e.g., Oral Arg. Tr. at 19-21, 24.)

The administrative record in this case reveals that the Assessor's presentation of

4

evidence to the Indiana Board was accompanied by an explanation (i.e., the testimony of her deputy) as to why the lots within Shadow Creek were deemed comparable. (See, e.g., Cert. Admin. R. at 129 (map showing the shape, size and location of lots within the subdivision), 176 (explaining that for assessment purposes, Shadow Creek is a designated "neighborhood"), 179 (explaining that all the lots were in the same subdivision), 182-201 (explaining that upon inspection, the lots appeared to be nearly identical in terms of their level topography, access to amenities, and primary views; while there were slight differences in the size and shape of the lots, those differences did not affect the value of the lots as evidenced by the fact they were selling for approximately the same price per acre).) To the extent the Coopers argue on appeal that the Indiana Board should have rejected those comparisons because they were "too conclusory" or "not detailed enough," the Court rejects their argument for the following two reasons.

First, for purposes of property assessment, the lots within Shadow Creek were already presumed comparable. Indeed, in Indiana, the assessed value of residential land is to reflect the recent sales prices of land within its neighborhood. See, e.g., 2011 REAL PROPERTY ASSESSMENT MANUAL (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2011) (see http://www.in.gov/legislative.iac/)) at 2; REAL PROPERTY ASSESSMENT GUIDELINES FOR 2011 (Guidelines) (incorporated by reference at 50 I.A.C. 2.4-1-2), Bk. 1, Ch. 2; IND. CODE § 6-1.1-4-13.6 (2012). A residential neighborhood is "a geographic area exhibiting a high degree of homogeneity in residential amenities, land use, economic and social trends, and housing characteristics." Guidelines, Bk. 2, Glossary at 16. In other words, a residential neighborhood exhibits uniformity in: (1)

development characteristics; (2) the size of lots or tracts; (3) subdivision plats and zoning maps; (4) infrastructure components; (5) distinctive geographic boundaries; and (6) sales statistics. See Guidelines, Bk. 1, Ch. 2 at 7-9. Consequently, it was not contrary to law for the Indiana Board to find that the Assessor's evidentiary presentation, both documentary and testimonial, was sufficient to demonstrate that the Coopers' lot and the other lots within Shadow Creek were comparable.[4]

Second, despite their protestation otherwise, the Coopers have done nothing more on appeal than invite the Court to reweigh the evidence that was presented to the Indiana Board. The Court will not accept their invitation absent a showing that the Indiana Board has abused its discretion. See Stinson v. Trimas Fasteners, Inc., 923 N.E.2d 496, 498-99 (Ind. Tax Ct. 2010). See also Hubler Realty Co. v. Hendricks Cnty. Assessor, 938 N.E.2d 311, 315 n.5 (Ind. Tax Ct. 2010) (explaining that the Indiana Board abuses its discretion when it either misinterprets the law or when its final determination is clearly against the logic and effect of the facts and circumstances before it). Here, the certified administrative record contains ample evidence to support the conclusion that the Coopers' land assessment at $22,172 an acre was appropriate. Apart from an appraisal that ultimately carried no weight, the Coopers presented no other evidence to demonstrate that that value was inaccurate. Given these evidentiary presentations, the Court therefore cannot say that the Indiana Board's final determination is against the logic and effect of the facts and circumstances that were

---

[4] Interestingly, while the Assessor did not present any evidence relating to three of the twelve lots in Shadow Creek, the Coopers did. The Coopers' evidence indicated that for the 2012 assessment date, those three lots were assessed at between $19,300 and $22,117 per acre. (See Cert. Admin. R. at 85-88, 129, 134-36, 138.) See also IND. CODE § 6-1.1-15-18(c)(1) (2012) (indicating that the assessments of comparable properties within the same taxing district are relevant in determining whether the subject property is accurately assessed).

before it.  See also, e.g., Dawkins v. State Bd. of Tax Comm'rs, 659 N.E.2d 706, 709 (Ind. Tax Ct. 1995) (explaining that an Indiana Board final determination is arbitrary or capricious "when it is without some basis which would lead a reasonable person to the same conclusion" (citation omitted)); Kildsig v. Warren Cnty. Assessor, 998 N.E.2d 764, 767 (Ind. Tax Ct. 2013) (explaining that an Indiana Board final determination is unsupported by substantial or reliable evidence when a reasonable person cannot find enough relevant evidence in the administrative record to support the decision).

## CONCLUSION

For the foregoing reasons, the Indiana Board's final determination is AFFIRMED.