# MEMORANDUM DECISION

Pursuant to Indiana Tax Court Rule 17, this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR PETITIONER:
**GREGORY S. COOPER**
BARNES & THORNBURG
Fort Wayne, IN

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
ATTORNEY GENERAL OF INDIANA
**EVAN W. BARTEL**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED

Sep 09 2015, 10:21 am

CLERK
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| CAROL COOPER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Cause No. 02T10-1405-TA-00022 |
| | ) |
| ALLEN COUNTY ASSESSOR, | ) |
| | ) |
| Respondent. | ) |

## ON APPEAL FROM A FINAL DETERMINATION OF
## THE INDIANA BOARD OF TAX REVIEW

**September 9, 2015**

WENTWORTH, J.

This case examines whether the Indiana Board of Tax Review erred in upholding Carol Cooper's 2012 land assessment. Upon review, the Court finds that the Indiana Board did not err.

**FACTS AND PROCEDURAL HISTORY**

Carol Cooper owns a single-family dwelling situated on 7.84 acres of land in the Shadow Creek subdivision in Huntertown, Indiana. Shadow Creek, with only twelve homesites ranging from four to eight acres each, "represents one of the most exclusive private residential developments [] in Allen County[.]" (Cert. Admin. R. at 134.) The neighborhood provides "[l]andscaped entries, paved private streets, illuminated walking paths, woods and rolling terrain[,]" creating "a sense of tranquility unparalleled in the marketplace." (Cert. Admin. R. at 134.)

For the March 1, 2012 assessment, the Assessor assigned Carol's property an assessed value of $517,100 ($173,400 for land and $343,700 for improvements). Believing her land assessment to be too high, Carol filed an appeal with the Allen County Property Tax Assessment Board of Appeals (PTABOA) on August 13, 2012. On December 31, 2012, the PTABOA denied her appeal. On February 14, 2013, she filed an appeal with the Indiana Board of Tax Review. The Indiana Board conducted a hearing on the appeal on October 10, 2013.

During that hearing, Carol and the Assessor each made evidentiary presentations to the Indiana Board to support their respective positions. For instance, Carol submitted a 2011 residential appraisal report for a contiguous property owned by her son that valued his 7.78 acre lot in Shadow Creek at $62,240. (See Cert. Admin. R. at 69, 71.) The Assessor, on the other hand, submitted documentation indicating that between 2005 and 2011, five vacant lots in Shadow Creek were sold at prices ranging

from $20,000 to $23,000 an acre.[1] (See Cert. Admin. R. at 113-30, 140.) The Assessor also presented evidence indicating that two of those lots were relisted for sale in 2012 at $22,000 to $24,500 an acre. (See Cert. Admin. R. at 135-36, 140.) Finally, the Assessor presented evidence demonstrating that the last three remaining lots in Shadow Creek were being marketed at prices of approximately $25,000 an acre. (See Cert. Admin. R. at 134, 137-38, 140.) Consequently, the Assessor argued that Carol's land assessment of $22,117 an acre was correct.

On April 8, 2014, the Indiana Board issued a final determination in which it found that the Assessor's evidence established a prima facie case that Carol's land assessment was proper.[2] The Indiana Board also determined that Carol did not rebut that prima facie case because the appraisal she submitted was not credible and therefore carried no weight.[3] Accordingly, the Indiana Board affirmed Carol's 2012 land assessment of $173,400.

---

[1] The Assessor pointed out, however, that of these five sales, the two from 2010 and 2011 were the most relevant to Carol's 2012 assessment. (See Cert. Admin. R. at 190.) See also 50 IND. ADMIN. CODE 27-5-2(a) (2012) (see http://www.in.gov/legislative.iac/) (indicating that "[t]he county assessor shall use sales of properties occurring during a time period that is as short as possible and, ideally not more than fourteen (14) months before the March 1 assessment and valuation date").

[2] The Indiana Board determined that pursuant to Indiana Code § 6-1.1-15-17.2(d), the Assessor bore the burden of proving Carol's 2012 assessment was correct. (Cert. Admin. R. at 22 ¶¶ 24-27.) That determination is not at issue in this case.

[3] The Indiana Board explained that the appraisal Carol submitted indicated that her neighbor – who also happened to Carol's son and attorney – purchased his 7.78 acres of land in 2007 for $62,240. (See Cert. Admin. R. at 28 ¶ j.) (See also Cert. Admin. R. at 184-85.) The Indiana Board declined to give that stated land value any weight, however, because other evidence submitted during the hearing indicated that his purchase was not accomplished in an arms-length transaction. (See Cert. Admin. R. at 28 ¶¶ j-k (explaining that not only did the evidence show that Carol sold the land to her son, but also that she received no money for her sale).)

3

Carol initiated an original tax appeal on May 22, 2014. The Court heard oral argument on January 16, 2015 at Indiana Tech Law School in Fort Wayne, Indiana.[4] Additional facts will be supplied as necessary.

**STANDARD OF REVIEW**

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). Accordingly, Carol must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial or reliable evidence. See IND. CODE § 33-26-6-6(e)(1), (5) (2015).

**DISCUSSION**

On appeal, Carol argues that the Indiana Board's final determination must be reversed because it is contrary to law and it is not supported by substantial evidence. (See Oral Arg. Tr. at 17, 66; Pet'r Br. at 26.) More specifically, she explains that this Court has repeatedly told litigants who rely on comparable properties to either challenge or defend their assessments to: 1) identify the characteristics of the subject property; 2) explain how those characteristics compare to the characteristics of the purportedly comparable property; and 3) explain how any differences between the properties affect their relative market values-in-use. (See Pet'r Br. at 13 (citing O'Donnell v. Dep't of Local Gov't Fin., 854 N.E.2d 90, 95 (Ind. Tax Ct. 2006); Long v. Wayne Twp. Assessor, 821 N.E.2d 466, 471 (Ind. Tax Ct. 2005), review denied).) Carol maintains that the Assessor never provided any such explanation at the Indiana Board hearing and as a

---

[4] The Court wishes to thank the staff and students at Indiana Tech Law School for their hospitality.

result, the Assessor's evidence was not probative and the Indiana Board erred in determining that the Assessor made a prima facie case. (See Pet'r Br. at 15-26.) (See also, e.g., Oral Arg. Tr. at 19-21, 24.)

The administrative record in this case reveals that the Assessor's presentation of evidence to the Indiana Board was accompanied by an explanation (i.e., the testimony of her deputy) as to why the lots within Shadow Creek were deemed comparable. (See, e.g., Cert. Admin. R. at 140 (map showing the shape, size and location of lots within the subdivision), 184 (explaining that for assessment purposes, Shadow Creek is a designated "neighborhood"), 187 (explaining that all the lots were in the same subdivision), 190-209 (explaining that upon inspection, the lots appeared to be nearly identical in terms of their level topography, access to amenities, and primary views; while there were slight differences in the size and shape of the lots, those differences did not affect the value of the lots as evidenced by the fact they were selling for approximately the price per acre).) To the extent Carol argues on appeal that the Indiana Board should have rejected those comparisons because they were "too conclusory" or "not detailed enough," the Court rejects her argument for the following two reasons.

First, for purposes of property assessment, the lots within Shadow Creek were already presumed comparable. Indeed, in Indiana, the assessed value of residential land is to reflect the recent sales prices of land within its neighborhood. See, e.g., 2011 REAL PROPERTY ASSESSMENT MANUAL (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2011) (see http://www.in.gov.legislative.iac/)) at 2; REAL PROPERTY ASSESSMENT GUIDELINES FOR 2011 (Guidelines) (incorporated by reference at 50 I.A.C. 2.4-1-2), Bk.

1, Ch. 2; IND. CODE § 6-1.1-4-13.6 (2012). A residential neighborhood is "a geographic area exhibiting a high degree of homogeneity in residential amenities, land use, economic and social trends, and housing characteristics." Guidelines, Bk. 2, Glossary at 16. In other words, a residential neighborhood exhibits uniformity in: (1) development characteristics; (2) the size of lots or tracts; (3) subdivision plats and zoning maps; (4) infrastructure components; (5) distinctive geographic boundaries; and (6) sales statistics. See Guidelines, Bk. 1, Ch. 2 at 7-9. Consequently, it was not contrary to law for the Indiana Board to find that the Assessor's evidentiary presentation, both documentary and testimonial, was sufficient to demonstrate that Carol's lot and the other lots within Shadow Creek were comparable.[5]

Second, despite her protestation otherwise, Carol has done nothing more on appeal than invite the Court to reweigh the evidence that was presented to the Indiana Board. The Court will not accept her invitation absent a showing that the Indiana Board has abused its discretion. See Stinson v. Trimas Fasteners, Inc., 923 N.E.2d 496, 498-99 (Ind. Tax Ct. 2010). See also Hubler Realty Co. v. Hendricks Cnty. Assessor, 938 N.E.2d 311, 315 n.5 (Ind. Tax Ct. 2010) (explaining that the Indiana Board abuses its discretion when it either misinterprets the law or when its final determination is clearly against the logic and effect of the facts and circumstances before it). Here, the certified administrative record contains ample evidence to support the conclusion that Carol's land assessment at $22,117 an acre was appropriate. Apart from an appraisal that

---

[5] Interestingly, while the Assessor did not present any evidence relating to the last three of the twelve lots in Shadow Creek, Carol did. Carol's evidence indicated that for the 2012 assessment date, those three lots were assessed at between $19,300 and $22,172 an acre. (See Cert. Admin. R. at 92-95, 140, 142-44, 146-47.) See also IND. CODE § 6-1.1-15-18(c)(1) (2012) (indicating that the assessments of comparable properties within the same taxing district are relevant in determining whether the subject property is accurately assessed).

ultimately carried no weight, Carol presented no other evidence to demonstrate that that value was inaccurate. Given these evidentiary presentations, the Court cannot say the Indiana Board's final determination is against the logic and effect of the facts and circumstances that were before it. See also, e.g., Dawkins v. State Bd. of Tax Comm'rs, 659 N.E.2d 706, 709 (Ind. Tax Ct. 1995) (explaining that an Indiana Board final determination is arbitrary or capricious "when it is without some basis which would lead a reasonable person to the same conclusion" (citation omitted)); Kildsig v. Warren Cnty. Assessor, 998 N.E.2d 764, 767 (Ind. Tax Ct. 2013) (explaining that an Indiana Board final determination is unsupported by substantial or reliable evidence when a reasonable person cannot find enough relevant evidence in the administrative record to support the decision).

## CONCLUSION

For the foregoing reasons, the Indiana Board's final determination is AFFIRMED.