**BIG FOOT STORES LLC, Petitioner,**

v.

**FRANKLIN TOWNSHIP ASSESSOR, Mill Township Assessor, Pleasant Township Assessor, and Grant County Assessor, Respondents.**

Nos. 49T10–0712–TA–74, 49T10–0712–TA–75, 49T10–0712–TA–76, 49T10–0712–TA–77.

Tax Court of Indiana.

Dec. 9, 2009.

Timothy J. Vrana, Timothy J. Vrana LLC, Columbus, IN, Attorney for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Andrew W. Swain, Chief Counsel, Tax Section, Jennifer E. Gauger, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

Jon B. Laramore, Brent A. Auberry, Baker & Daniels LLP, Indianapolis, IN, Attorneys for Amicus Curiae, F/C Michigan City Development, LLC.

FISHER, J.

Big Foot Stores LLC (Big Foot) appeals from the Indiana Board of Tax Review's (Indiana Board) final determinations which upheld the 2003 interim assessments of its property by the Franklin Township Assessor, the Mill Township Assessor, the Pleasant Township Assessor, and the Grant County Assessor (hereinafter, "the Assessors").[1] While Big Foot presents two is-

---

1. Although the Indiana Board held one hearing on the above-captioned cases, it produced four certified administrative records and issued four Findings of Fact and Conclusions of Law. Thus, for ease of reference in this opinion, the Court will refer to the certified ad-

sues for review, the Court consolidates and restates them as: whether the Indiana Board erred in upholding Big Foot's 2003 interim assessments.

## FACTS AND PROCEDURAL HISTORY

During the 2003 tax year, Big Foot owned three convenience stores (with gasoline stations) and one office building in Grant County, Indiana. Two of the convenience stores were located in Marion (Franklin and Pleasant Townships); the other convenience store and the office building were located in Gas City (Mill Township).

On or about December 5, 2005, the Assessors issued "Notices of Assessment By Assessing Officer" (Form 113s) for the 2003 tax year. The Form 113s provided that Big Foot's properties were reassessed because the properties' sales disclosure forms caused the Assessors to believe that these properties were undervalued.[2] (*See* Cert. Admin. R74 at 71; Cert. Admin. R75 at 69; Cert. Admin. R76 at 73; Cert. Admin. R77 at 74 (footnote added).)

On January 13, 2006, Big Foot filed four Petitions for Review (Form 130s) with the Grant County Property Tax Assessment Board of Appeals (the PTABOA), alleging that the 2003 interim assessments were not uniform and equal. Accordingly, Big Foot requested that the properties' 2002 assessments be reinstated. On June 19, 2006, the PTABOA denied each of Big Foot's Form 130s.

On July 17, 2006, Big Foot filed four Petitions for Review (Form 131s) with the Indiana Board. On July 26, 2007, the Indiana Board held a joint hearing on the matter. Big Foot once again requested that its 2002 assessments be reinstated because it believed that the interim assessments were not only not uniform or equal, but unauthorized as well. On October 25, 2007, the Indiana Board issued its final determinations upholding the interim assessments in their entirety. More specifically, the Indiana Board determined that the Assessors' interim assessments were authorized under Indiana Code § 6–1.1–9–1[3] and then concluded that because Big Foot failed to present any probative evidence as to the actual market values-in-use of its properties, the Assessors' interim assessments should be upheld. (*See* Cert. Admin. R74 at 27–30 ¶ 13; Cert. Admin. R75 at 24–28 ¶ 14; Cert. Admin. R76 at 27–30 ¶ 14; Cert. Admin. R77 at 27–30 ¶ 14 (footnote added).)

On December 5, 2007, Big Foot initiated four original tax appeals. On January 23, 2008, the parties moved to have the appeals consolidated pursuant to Indiana Ap-

---

ministrative record pertaining to Big Foot's 49T10–0712–TA–74 appeal as "Cert. Admin. R74," the administrative record pertaining to its 49T10–0712–TA–75 appeal as "Cert. Admin. R75," the administrative record pertaining to its 49T10–0712–TA–76 appeal as "Cert. Admin. R76," and the administrative record pertaining to its 49T10–0712–TA–77 appeal as "Cert. Admin. R77."

2. As a result, the assessments on Big Foot's properties increased from $175,100 to $619,400, from $131,600 to $742,500, from $297,600 to $730,100, and from $128,800 to $373,300. (*See* Cert. Admin. R74 at 69–70; Cert. Admin. R75 at 67–68; Cert. Admin. R76 at 71–72; Cert. Admin. R77 at 72–73.) Each of these increases was attributable to the value of the improvements only; the land values were not increased.

3. During the 2003 tax year, Indiana Code § 6–1.1–9–1 provided: "[i]f a[n] ... assessor ... believes that any taxable tangible property has been ... undervalued on the assessment rolls or the tax duplicate for any year or years, the [assessor] ... shall give written notice under ... IC 6–1.1–4–22 of the ... increase in assessment." IND.CODE ANN. § 6–1.1–9–1 (West 2003) (amended 2004).

pellate Rule 38(B); the Court subsequently granted their motion.[4] The Court heard the parties' oral arguments on November 21, 2008. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ When this Court reviews a final determination of the Indiana Board it is limited to determining whether it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE ANN. § 33–26–6–6(e)(1)–(5) (West 2009). The party seeking to overturn the Indiana Board's final determination bears the burden of proving its invalidity. *Osolo Twp. Assessor v. Elkhart Maple Lane Assocs.*, 789 N.E.2d 109, 111 (Ind. Tax Ct.2003).

## DISCUSSION AND ANALYSIS

On appeal, Big Foot asserts that the Indiana Board erred in upholding the 2003 interim assessments of its real property for two reasons. First, Big Foot asserts that interim assessments may be made only when there has been a change to the property that increases or decreases its value. (*See* Pet'r Br. at 6–16.) Alternatively, Big Foot asserts that its interim assessments were improper because they were essentially the result of "sales chasing," "selective reappraisals," or "spot assessments."[5] (*See* Pet'r Br. at 16–21 (footnote added).) The Court will address these claims in turn.

---

4. Before these cases were consolidated, however, the Assessors' counsel filed four motions to dismiss. In these identical motions, the Assessors asserted that the 2007 amendment of Indiana Code § 6–1.1–15–5(b) necessitated the dismissal of the "Pleasant Township Assessor" because the Grant County Assessor was the only proper party to the action. (*See* Resp'ts Mot. Dismiss at 1–2, filed Jan. 9, 2008.) Big Foot, on the other hand, claimed that the Pleasant Township Assessor was a proper party pursuant to Tax Court Rule 4. (*See* Pet'r Resp. Resp'ts Mot. Dismiss, filed Jan. 16, 2008.) Big Foot is correct.

At the time Big Foot initiated its original tax appeals, Indiana Code § 6–1.1–15–5 provided that "[t]he county assessor is a party to the review under this section." IND.CODE ANN. § 6–1.1–15–5(b) (West 2008). Nevertheless, Indiana Tax Court Rule 4(B) stated that "the named respondent shall be the local governmental official or entity that made the original assessment valuation[.]" Ind. Tax Court Rule 4(B)(2)(a) (West 2008). To the extent the Court's rule and the statute were in conflict,

the rule governed. *See Long v. Wayne Twp. Assessor*, 820 N.E.2d 190, 193 (Ind. Tax Ct.2005) (citation omitted). Therefore, the Assessors' motions to dismiss are denied.

5. " 'Sales chasing,' also known as selective reappraisal, is the practice of selectively changing values for properties that have been sold, while leaving other values alone." *County of Douglas v. Nebraska Tax Equalization and Review Comm'n*, 262 Neb. 578, 635 N.W.2d 413, 419 (2001). In turn, "selective reappraisal" cases have been characterized as those in which either one taxpayer or a small group of taxpayers are singled-out "for revaluation or for first-time assessment when similar property is not assessed for any [additional] tax liability." *Picerne v. DiPrete*, 428 A.2d 1074, 1077 (R.I.1981). Similarly, a "spot assessment" involves the practice of reassessing only those properties that were the subjects of recent sales while leaving undisturbed the assessed valuations of properties in the same class of property that have not been sold. *See Township of W. Milford v. Van Decker*, 120 N.J. 354, 576 A.2d 881, 882 (1990).

### Authority to reassess in the interim

■ Big Foot contends that the interim assessments of its property were improper, as neither the physical state nor the actual use of the properties changed since their 2002 assessments. (*See* Pet'r Br. 6, 16.) As a result, Big Foot claims that its properties' 2002 assessed values should have been carried forward to the 2003 tax year. (*See* Pet'r Br. at 16.) In contrast, the Assessors maintain that the interim assessments were authorized under Indiana Code § 6–1.1–9–1, given that the sales disclosure forms had caused them to believe that the properties were undervalued. (*See* Resp'ts Br. at 5–7; Oral Argument Tr. at 20–23.) The Court agrees with the Assessors.

On May 14, 2009, this Court issued a decision in which it explained that Indiana's overhauled property tax assessment system recognized (albeit, implicitly) that market trends could affect the value of real property. *See Charwood LLC v. Bartholomew County Assessor,* 906 N.E.2d 946, 951 (Ind. Tax Ct.2009). Accordingly, the Court held that a local assessing official's interim assessments were authorized under Indiana Code § 6–1.1–9–1, despite the fact that none of the properties had experienced physical changes or changes in use. *See id.* at 949–51. The holding of that case is equally applicable in this case. The Court therefore finds that the Indiana Board did not err when it determined that the Assessors' interim assessments were authorized under Indiana Code § 6–1.1–9–1.

### Spot Assessments

Next, Big Foot contends that the Indiana Board erred in upholding these interim assessments, as the Assessors "admitted" that they were actually "spot assessments:" the Assessors agreed that while there were approximately 40–50 convenience stores throughout Grant County in 2003, Big Foot's stores were the only ones to be reassessed because they had been sold. (*See* Pet'r Br. at 20–21 (citations omitted).) In turn, Big Foot maintains that these "spot assessments" should be rejected because the assessing community generally recognizes that engaging in such " 'practice[s] is unprofessional in that it breeds inequities and, unless adjusted for, renders sales ratio studies invalid.' " [6] (Pet'r Br. at 16–17 (quoting INTERNATIONAL ASSOCIATION OF ASSESSING OFFICERS, MASS APPRAISAL OF REAL PROPERTY 396, 397 (1999) (footnote added)).) Accordingly, Big Foot asks that the Indiana Board's final determinations be reversed and that its 2002 assessments be reinstated.

The Assessors, on the other hand, assert that Big Foot has not demonstrated that it is entitled to the relief it seeks. Indeed, while the Assessors agree that spot assessments are highly disfavored within the assessing community and this State, they assert that they did not selectively reassess Big Foot's property. (*See* Oral Argument Tr. at 22–24.) Rather, claim the Assessors, they adjusted Big Foot's assessments as a result of Big Foot's filing of its 2003 assessment appeals, a risk that Big Foot opened itself up to, given the fact that the sales disclosure forms plainly showed that Big Foot's property was undervalued.[7] (*See, e.g.,* Cert. Admin. R74

---

6. Likewise, amicus maintains that spot assessments guarantee a lack of uniformity and equality in assessment, given their patent disparate treatment of sold and unsold properties. (*See* Oral Argument Tr. at 15–18.)

7. The Court notes, however, that the evidence in the administrative record refutes this claim: Big Foot initiated these appeals *after* it received notice of the interim assessments. (*Cf., e.g.,* Cert. Admin. R74 at 9–12 (Big Foot's appeal form challenging the reassessed

at 185, 189–90; Oral Argument Tr. at 22–24 (footnote added).) In any event, the Assessors argue that to the extent Big Foot has merely attacked their methodologies and not offered any probative evidence (such as a sale ratio study or a market value-in-use appraisal) which would have demonstrated that their interim assessments either lacked uniformity or did not reflect the properties' actual market values-in-use, the Indiana Board's final determinations were proper. (*See* Resp'ts Br. at 12–16.)

Whether the interim assessments of two recently sold classes of property (i.e., convenience stores and office buildings) may be upheld when unsold properties of the same classifications and within the same taxing jurisdiction were not reassessed is one of first impression in Indiana. The Court, however, saves its analysis of that issue for another day, as the case at bar can be resolved on other grounds.[8]

■ During the administrative hearing, the Assessors presented both testimonial and documentary evidence which established that the properties' 2003 assessed values were, for the most part, equivalent to their 2002/2003 sale prices as recorded on the sales disclosure forms, less the value of the personal property transferred in conjunction with the sales.[9] (*See* Cert. Admin. R74 at 93–95, 172–84; Cert. Admin. R75 at 90–91; Cert. Admin. R76 at

---

value) *with* Cert. Admin. R74 at 13 (the Assessors' notice of interim assessment).)

8. Nevertheless, the Court notes that several jurisdictions have held that selective reappraisals, spot assessments, and sales chasing are prohibited assessment practices that violate both the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the uniformity and equality provisions of state constitutions. Indeed, these cases explain that such assessment practices cannot be upheld, as they arbitrarily, but purposefully, subject the owners of comparable properties to both disparate treatment and disproportionate rates of taxation. *See, e.g., Allegheny Pittsburgh Coal Co. v. Webster County Comm'n,* 488 U.S. 336, 340–46, 109 S.Ct. 633, 102 L.Ed.2d 688 (U.S.1989); *Thorpe v. Benham,* 161 Ga.App. 116, 289 S.E.2d 275, 276 (1982); *Van Decker,* 576 A.2d at 884–86; *Ernest W. Hahn, Inc. v. County Assessor for Bernalillo County,* 92 N.M. 609, 592 P.2d 965, 967–69 (1978); *Penn Phillips Lands, Inc. v. State Tax Comm'n,* 247 Or. 380, 430 P.2d 349, 351–52 (1967); *Picerne,* 428 A.2d at 1078–79; *Town of Castleton v. Parento,* No.2008–203, 2009 WL 3386312, at ¶¶9–17, 988 A.2d 158 at 160–64 (Vt.2009).

The prohibition of such assessment practices, however, does not necessarily bar the interim assessment of a specific class of properties. In fact, such interim assessments have been found to be constitutionally permissible when the assessor's selection of the properties was based on legitimate reasons and the

properties were treated alike: i.e., the adjustment of each assessment subjected the property owners to the same/proportional rate of taxation. *See, e.g., Security Props. v. Arizona Dep't of Prop. Valuation,* 112 Ariz. 54, 537 P.2d 924, 925–27 (1975); *Mountain View Crossing Investors, LLC v. Township of Wayne,* 21 N.J.Tax 481, 482–83 (N.J.Super.Ct.App.Div.2004), *cert. denied by* 182 N.J. 427, 866 A.2d 983 (N.J.2005); *Regent Care Ctr., Inc. v. Hackensack City,* 362 N.J.Super. 403, 828 A.2d 332, 337–42 (2003), *cert. denied by* 178 N.J. 373, 840 A.2d 258 (2003); *Chadwick 99 Assocs. v. Director, Div. Taxation,* 24 N.J.Tax 493, 501–08 (N.J. Tax Ct.2008); *M.T Assocs. v. Town of Randolph,* 179 Vt. 81, 889 A.2d 740, 743–46 (2005).

9. As an aside, amicus has also suggested that the sales of Big Foot's properties should be disregarded because they included something other than their "fee simple value[s]." (*See* Oral Argument Tr. at 14–15.) The Court, however, need not address this issue, as the Indiana Board properly concluded that Big Foot's proffered testimony on the matter was conclusory. (*See, e.g.,* Cert. Admin. R74 at 29 ¶ 13(k).) Indeed, while Big Foot's witness explained that these sales were a means to raise capital, he provided no further details as to the terms of these transactions. (*See* Cert. Admin. R74 at 154–56.) Accordingly, the Court cannot say that the Indiana Board erred in assigning little weight to that testimony.

99–101; Cert. Admin. R77 at 100–02 (footnote added).) This Court has previously explained that evidence of a property's market value-in-use must reflect the property's value as of the appropriate valuation date. *See, e.g., O'Donnell v. Dep't of Local Gov't Fin.*, 854 N.E.2d 90, 95 (Ind. Tax Ct.2006); *Long v. Wayne Twp. Assessor*, 821 N.E.2d 466, 471–72 (Ind. Tax Ct.2005), *review denied.* The appropriate valuation date for the 2003 tax year was January 1, 1999. *See* 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) (incorporated by reference at 50 IND. ADMIN. CODE 2.3–1–2 (2002 Supp.)) at 2, 4, 12. Accordingly, the Assessors needed to provide some explanation as to how the June 19, 2002 and the July 16, 2003 sales prices of Big Foot's properties were related to their values as of January 1, 1999. *See, e.g., O'Donnell*, 854 N.E.2d at 95; *Long*, 821 N.E.2d at 471–72. *See also Kooshtard Prop. VI, LLC v. White River Twp. Assessor*, 836 N.E.2d 501, 506 n. 6 (Ind. Tax Ct.2005) (explaining that when assessing officials use other market value-in-use evidence to justify their assessments, their evidence must conform to the same standards to which they (and this Court) would hold taxpayers' evidence), *review denied.* The Assessors, however, made no such showing. *See supra* pp. 8–9. Consequently, the Indiana Board erred when it upheld Big Foot's 2003 interim assessments, as they were based on market value-in-use evidence which had no probative value with respect to the appropriate valuation date.

## CONCLUSION

For the above stated reasons, the final determinations of the Indiana Board are REVERSED. The matter is REMANDED to the Indiana Board so that it may instruct the appropriate assessing officials to reinstate the assessed values assigned to Big Foot's properties during the 2002 tax year.