**HUBLER REALTY COMPANY,**
**Petitioner,**

v.

**HENDRICKS COUNTY ASSESSOR,**
**Respondent.**

**No. 49T10–1001–TA–5.**

Tax Court of Indiana.

Nov. 29, 2010.

**312**

Timothy J. Vrana, Timothy J. Vrana LLC, Columbus, IN, Attorney for Petitioner.

Gregory E. Steuerwald, Tyler O. Starkey, Steuerwald, Zielinski & Witham, Danville, IN, Attorneys for Respondent.

FISHER, J.

The Hubler Realty Company (Hubler) challenges the final determinations of the Indiana Board of Tax Review (Indiana Board) which upheld the Hendricks County Property Tax Assessment Board of Appeals' (the PTABOA) assessments of Hubler's commercial properties for the 2006 tax year (the year at issue). The issue for the Court to decide is whether the Indiana Board's final determinations were improper.

### FACTS AND PROCEDURAL HISTORY

During the year at issue, Hubler owned three contiguous parcels of land (hereinafter, "Parcels 195–1, 195–2, and 197–1") in Plainfield, Indiana. (*See* Cert. Admin. R. at 114–19.) An automobile service center and a commercial garage were located on Parcel 195–1 and Parcel 197–1, respectively. (Cert. Admin. R. at 114–15, 118–19, 138.) For the year at issue, the Hendricks County Assessor (the Assessor) assessed each of Hubler's parcels individually: Parcel 195–1 was assessed at $1,011,400 ($891,900 for land and $119,500 for improvements); Parcel 195–2 was assessed at $173,300; and Parcel 197–1 was assessed at $453,500 ($413,100 for land and $40,400 for improvements). (Cert. Admin. R. at 114–19.)[1]

On May 15, 2007, Hubler filed three petitions for review (Form 130s) with the PTABOA, alleging that its assessments were inaccurate because the three parcels should have been assessed as a single property. (*See, e.g.,* Cert. Admin. R. at 11–13.) On January 4, 2008, after conducting a hearing on the matter, the PTABOA issued three final determinations (Form 115s) in which it explained that its review of "the Pictomery display" and its on-site inspection revealed that the land delineations on two of the parcels were incorrect. (*See, e.g.,* Cert. Admin. R. at 5–10, 173.)

---

1. As a result, the parcels' collective assessed value was $1,638,200 ($1,478,300 for land and $159,900 for improvements). (*See* Cert. Admin. R. at 114–19.)

Accordingly, the PTABOA adjusted the assessments of Parcels 195–1 and 195–2. Consequently, the overall assessed value of Hubler's properties was reduced from $1,638,200 to $1,553,000 ($1,393,100 for land and $159,900 for improvements). (*See* Cert. Admin. R. at 5–10, 19–24, 33–38.)

■ Still believing its assessments to be too high, Hubler filed three petitions for review (Form 131s) with the Indiana Board on February 13, 2008. The Indiana Board subsequently held a hearing on the matter. During the hearing, Hubler submitted an appraisal[2] valuing its properties at $1,375,000. (*See* Cert. Admin. R. at 80–112, 156–59 (footnote added).) The PTABOA claimed, however, that Hubler's sales disclosure form demonstrated that the properties were not overassessed.[3] (*See* Cert. Admin. R. at 122–23, 169–72 (footnote added).) On December 17, 2009, the Indiana Board issued its final determinations in which it explained that the totality of the evidence (i.e., the appraisal and the sales disclosure form) demonstrated that the PTABOA's assessments did indeed reflect the properties' market values-in-use.[4] (*See* Cert. Admin. R. at 72–73 ¶ 15(d)-(j) (footnote added).) Accordingly, the Indiana Board upheld the PTABOA's assessments.

On January 22, 2010, Hubler initiated this original tax appeal. The Court heard the parties' oral arguments on October 28, 2010. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ The party seeking to overturn a final determination of the Indiana Board bears the burden of demonstrating its invalidity. *Osolo Twp. Assessor v. Elkhart Maple Lane Assocs.*, 789 N.E.2d 109, 111 (Ind. Tax Ct.2003). Accordingly, Hubler must demonstrate to the Court that the Indiana Board's final determinations are:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

*See* IND.CODE ANN. § 33–26–6–6(e)(1)–(5) (West 2010).

## ANALYSIS AND OPINION

■ On appeal, Hubler asserts that the Indiana Board's final determinations should be reversed because they sanction the " 'loathsome and inequitable [assessing] practice' " of selective reappraisal and sales chasing. (*See* Pet'r Br. at 4–6 (cita-

---

2. The appraisal was prepared in conformance with the Uniform Standards of Professional Appraisal Practice (USPAP). (Cert. Admin. R. at 81.)

3. The sales disclosure form provided that Hubler purchased its properties on June 2, 2005 for $2,000,000. (Cert. Admin. R. at 122–23.)

4. Indiana assesses real property on the basis of its "market value-in-use" (i.e., the value of the property "for its current use, as reflected by the utility received by the owner or a similar user, from the property"). *See* IND. ANN.CODE § 6–1.1–31–6(c) (West 2006); 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) (hereinafter, "Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.3–1–2 (2002 Supp.)) at 2. In 2006, a property's market value-in-use was to reflect its value as of January 1, 2005. *See* IND.CODE ANN. § 6–1.1–4–4.5(b) (West 2006). *See also* 50 IND. ADMIN. CODE 21–3–3(b) (2006) (*see* http://www.in.gov/legislative/iac/).

tion omitted).) (*See also* Oral Argument Tr. at 4–5.) According to Hubler, the Assessor admitted, during the Indiana Board hearing, that she had engaged in the prohibited practice when she testified that she " 'believe[d] taking one sale and putting it to the actual property that is in question is acceptable[.]' " (Pet'r Br. at 5 (*quoting* Cert. Admin. R. at 177).) In another instance, argues Hubler, a member of the PTABOA admitted to engaging in the practice when he explained that the PTABOA had "considered . . . the sale on the property [and had] used [it in] making [its] decision[.]" (*See* Pet'r Br. at 5 (*citing* Cert. Admin. R. at 175).)

Nearly one year ago, this Court reviewed a case in which a taxpayer alleged that an assessing official had selectively reappraised its commercial properties. *See Big Foot Stores LLC v. Franklin Twp. Assessor,* 919 N.E.2d 621, 624 (Ind. Tax Ct.2009). While the Court resolved the case on other grounds, it explained that:

> "[s]ales chasing[ ]" . . . is the practice of selectively changing values for properties that have been sold, while leaving other values alone. In turn, "selective reappraisal" cases have been characterized as those in which either one taxpayer or a small group of taxpayers are singled-out for revaluation or for first-time assessment when similar property is not assessed for any [additional] tax liability. Similarly, a "spot assessment" involves the practice of reassessing only those properties that were the subjects of recent sales while leaving undisturbed the assessed valuations of properties in the same class of property that have not been sold.

*Id.* at 623 n. 5 (internal quotation marks and citations omitted). The certified administrative record (record) in this case, however, does not evidence that either the Assessor or the PTABOA applied any of these practices in determining the market values-in-use of Hubler's properties.

■ When a taxpayer elects to challenge its assessment, it assumes a certain degree of risk, as resolution of a property tax appeal may lead to an increase in assessment. *See, e.g., id.* at 624; *Joyce Sportswear Co. v. State Bd. of Tax Comm'rs,* 684 N.E.2d 1189, 1194 n. 8 (Ind. Tax Ct.1997), *review denied.* Each party to an appeal seeks to persuade the Indiana Board that its valuation of the subject property best reflects its market value-in-use through the presentation of probative evidence. Indiana's assessment manual provides that such evidence may include, but is not limited to, "*sales information regarding the subject or comparable properties*" which necessarily would include the subject properties' sales disclosure form. 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) (incorporated by reference at 50 IND. ADMIN. CODE 2.3–1–2 (2002 Supp.)) at 5. (emphasis added).

Here, the record indicates that the Assessor's initial $1.6 million valuation of Hubler's properties was arrived at as a result of Indiana's annual trending process. (*See, e.g.,* Cert. Admin. R. at 7–9.) Nothing within the record suggests otherwise. (*See, e.g.,* Oral Argument Tr. at 12–14.) Indeed, during the Indiana Board hearing the Assessor testified: "When it comes down to an appeal I believe taking one sale and putting it to the actual property that is in question is acceptable; but when it comes down the appeal process I think it is very fundamental to use that sale as evidence." (Cert. Admin. R. at 177–78.) Thus, and contrary to Hubler's claim, the Assessor's testimony indicates that she believes that sales disclosure forms may be reviewed during the course of a property tax appeal. Her testimony also indicates that she believes such forms are useful when evaluating whether an assessment

reflects a property's market value-in-use. The Assessor's testimony does not suggest that her assessments or her determination as to the propriety thereof were the products of sales chasing, spot assessments, or selective reappraisals.

Similarly, the PTABOA's "consideration" of Hubler's sales disclosure form does not mean that it engaged in sales chasing or that it selectively reappraised Hubler's properties. Rather, the testimony merely suggests that the PTABOA *reviewed* Hubler's sales disclosure form in order to determine whether the properties were overassessed. Indeed, the record reveals that the PTABOA, upon receiving Hubler's challenge to its valuations, determined that the assessments (with the exception of the land measurements) were proper, as it reasoned that the information provided on the sales disclosure form corroborated the assessments (i.e., that Hubler purchased the properties for $2 million approximately five months after the effective valuation date (i.e., January 1, 2005)). (*See* Cert. Admin. R. at 7–9, 173–77.) *See also* notes 3–4.

Lastly, the record reveals that the Indiana Board's resolution of the case primarily turned on the weight afforded to the parties' evidentiary presentations. More specifically, the Indiana Board assigned less weight to Hubler's evidence, an appraisal valuing the properties at $1.3 million approximately three months before the effective valuation date, and greater weight to the PTABOA's evidence—assessments based on Indiana's annual trending process and substantiated by the properties' sales disclosure form. That determination was well within the purview of

the Indiana Board; this Court will not reverse it absent an abuse of discretion.[5] *See, e.g., Stinson v. Trimas Fasteners, Inc.,* 923 N.E.2d 496, 498–99 (Ind. Tax Ct.2010) (footnote added). Consequently, the Court cannot say that in upholding the PTABOA's assessments, the Indiana Board abused its discretion.

## CONCLUSION

For the above stated reasons, the Indiana Board's final determinations are AFFIRMED.

---

**5.** An abuse of discretion may occur if the Indiana Board's decision is clearly against the logic and effect of the facts and circumstances before it, or if the Indiana Board misinterprets the law. *See Indiana Dept. of State*

*Revenue, Inheritance Tax Div. v. Estate of Miller,* 894 N.E.2d 286, 288 (Ind. Tax Ct.2008) (citing *McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175, 180 (Ind.1993)), *review denied.*