David A. McKEEMAN, Sr., and Karen A. McKeeman, Petitioners,

v.

STEUBEN COUNTY ASSESSOR, Respondent.

No. 02T10–1104–TA–31.

Tax Court of Indiana.

May 28, 2014.

David A. McKeeman, Sr., Karen A. McKeeman, Fort Wayne, IN, Petitioners Appearing Pro Se.

Gregory F. Zoeller, Attorney General of Indiana, John P. Lowrey, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, Senior Judge.

This case concerns whether the Indiana Board of Tax Review erred in upholding David and Karen McKeeman's 2006 real property assessment. The Court finds it did not.

## FACTS AND PROCEDURAL HISTORY

The McKeemans own residential property in Pleasant Township, Steuben County, Indiana. For the 2006 tax year, the McKeemans' property was assessed at $489,000 ($292,800 for land and $196,200 for improvements).

The McKeemans believed their land assessment was too high and sought review first with the Steuben County Property Tax Assessment Board of Appeals and then with the Indiana Board. On March 11, 2011, after conducting a hearing, the Indiana Board issued a final determination upholding the McKeemans' assessment in its entirety.

On April 22, 2011, the McKeemans initiated this original tax appeal. The Court heard oral argument on October 13, 2011.[1]

---

1. During oral argument, the Court sustained the Assessor's objection to the McKeemans' arguments regarding the thirteen exhibits filed with their brief to the extent the arguments and exhibits were not presented to the Indiana Board. (*See* Oral Arg. Tr. at 29–32; Resp't Br. at 7–8.) Accordingly, the Court will not consider any specific arguments re-

Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ The party seeking to overturn an Indiana Board final determination bears the burden to demonstrate that it is invalid. *Hubler Realty Co. v. Hendricks Cnty. Assessor*, 938 N.E.2d 311, 313 (Ind.Tax Ct.2010). Consequently, the McKeemans must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, not in accordance with the law, or unsupported by substantial evidence. *See* IND. CODE § 33–26–6–6(e)(1), (5) (2014).

## LAW

■ In Indiana, real property is assessed on the basis of its market value-in-use: the value "of a property for its current use, as reflected by the utility received by the owner or a similar user, from the property[.]" 2002 REAL PROPERTY ASSESSMENT MANUAL (Manual) (incorporated by reference at 50 IND. ADMIN. CODE 2.3–1–2 (2002 Supp.)) at 2. *See also* IND.CODE § 6–1.1–31–6(c) (2006). To determine a property's market value-in-use, assessing officials refer to a series of guidelines that explain the valuation process for both land and improvements. *See* REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002–VERSION

A (Guidelines) (incorporated by reference at 50 I.A.C. 2.3–1–2), Bks. 1 and 2. While assessments made pursuant to these guidelines are presumed to be accurate, a taxpayer may rebut this presumption with market-based evidence (*e.g.*, sales data) that indicates that the property's assessment does not accurately reflect its market value-in-use.[2] Manual at 5.

## ANALYSIS

The McKeemans have asked this Court to reverse the final determination of the Indiana Board for three main reasons. The McKeemans first contend that the Indiana Board erred in disregarding their claim concerning the establishment of their neighborhood. The McKeemans also contend that the Indiana Board erred in rejecting their base rate claim. Lastly, the McKeemans contend that the Indiana Board erred in concluding that their sales comparison analysis lacked probative value.

### 1. The Neighborhood

Indiana's assessment guidelines provide that assessing officials must establish specific "neighborhoods" within each township for purposes of assessment.[3] *See* Guidelines, Bk. 1, Ch. 2 at 8. In establishing these neighborhoods, assessing officials must consider:

---

garding Exhibits 1–3, 5, 7, and 10–13. (*Compare, e.g.*, Cert. Admin. R. at 181–84 *with* Pet'rs' Br. at Ex. 10 (demonstrating the significant differences between Exhibit 10 and two related record exhibits).) The Court, however, will consider the arguments regarding Exhibits 4, 6, and 8–9 because they were presented to the Indiana Board. (*Compare* Cert. Admin. R. at 99–102, 127, 164, 167 *with* Pet'rs' Br. at Exs. 4, 6, 8–9.)

2. The assessment guidelines indicate that a taxpayer may present varying types of market-based evidence to rebut the presumption that an assessment is correct; nonetheless, one of the most effective methods to rebut this pre-

sumption is through the presentation of a market value-in-use appraisal, completed in conformance with the Uniform Standards of Professional Appraisal Practice (USPAP). *See Kooshtard Prop. VI, LLC v. White River Twp. Assessor*, 836 N.E.2d 501, 506 n. 6 (Ind.Tax Ct.2005), *review denied*.

3. A "neighborhood" is "[a] geographical area exhibiting a high degree of homogeneity in residential amenities, land use, economic and social trends, and housing characteristics." REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002–VERSION A (incorporated by reference at 50 IND. ADMIN. CODE 2.3–1–2), Bk. 2, Glossary at 14.

(1) common development characteristics; (2) the average age of the majority of improvements; (3) the size of lots or tracts; (4) subdivision plats and zoning maps; (5) school and other taxing district boundaries; (6) distinctive geographic boundaries; (7) any manmade improvements that significantly disrupt the cohesion of adjacent properties; (8) sales statistics; and (9) other characteristics deemed appropriate to assure equitable determinations.

*Id.*

■ On appeal, the McKeemans maintain that the Indiana Board's final determination is erroneous because the properties within their neighborhood demonstrate that the Assessor must have ignored Indiana's assessment guidelines in establishing their neighborhood. (*See* Oral Arg. Tr. at 102–03; Pet'rs' Reply Br. at 4–9; Pet'rs' Br. at 3, 10–11, 13–16.) (*See also* Cert. Admin. R. at 116–21, 203–08.) For example, the McKeemans explain that certain properties in their neighborhood had access to paved roads while others did not, that significant size (*i.e.,* depth) differences existed between some of the properties, and that a large, commercial, youth camp/retreat center bisected the entire neighborhood thereby destroying any real sense of cohesiveness.[4] (*See, e.g.,* Cert. Admin. R. at 55, 76–88, 91–95.)

■ The assessment guidelines, however, clearly indicate that a neighborhood may contain properties that vary with respect to road access, size, and use type. *See* Guidelines, Bk. 1, Ch. 2 at 8. Thus, those types of differences simply are not *per se* indicators of an improperly consti-

tuted neighborhood. Consequently, the Court cannot say the Indiana Board erred in rejecting the McKeemans' claim regarding the establishment of their neighborhood.

## 2. The Base Rate

■ The McKeemans also maintain that the Indiana Board's final determination is erroneous because the Assessor's evidence, in and of itself, demonstrated that several properties that are not comparable to their own were used to establish their land's base rate. (*See* Pet'rs' Reply Br. at 7–8; Pet'rs' Br. at 3, 6–29.) This, however, is incorrect.

Indiana's assessment guidelines call for the development of neighborhood valuation forms that establish "base rates" for commercial, industrial, and residential land in each of the townships throughout the county. *See generally* Guidelines, Bk. 1, Ch. 2; IND.CODE § 6–1.1–4–13.6 (2006) (explaining the base rate establishment process). In this case, the administrative record reveals that the Assessor introduced the McKeemans' neighborhood valuation form and their property record cards, which demonstrated that the McKeemans' land was assessed consistent with the established base rate of $5,900 per front foot. (*See* Cert. Admin. R. at 157–59, 164.) The administrative record, however, does not disclose what properties were actually used in developing that base rate. (*See generally* Cert. Admin. R.) Consequently, the McKeemans have not shown that the Indiana Board erred in upholding the $5,900 base rate applied to their land.[5]

---

**4.** In fact, the McKeemans suggest that Indiana's assessment guidelines provide that neighborhoods must contain the same types of properties (*e.g.,* all residential or all commercial). (*See* Oral Arg. Tr. at 44; Pet'rs' Br. at 10–11.)

**5.** Moreover, the McKeemans initially used two of the allegedly non-comparable properties to develop their sales comparison analysis. (*Compare* Cert. Admin. R. at 55 *with* 152, 169–175.)

### 3. The Sales Comparison Analysis

■ During the Indiana Board hearing, the McKeemans presented a sales comparison analysis that valued their two parcels of residential land at $62,341 [6] using data from seven sales transactions in which ten properties were conveyed ("the Comps").[7] (*See* Cert. Admin. R. at 53.) In arriving at this value, the McKeemans:

(1) Determined the land value of each of the Comps by deducting from their total sales prices the assessed value of their improvements;

(2) Calculated the front foot values of each of the Comps by dividing their land values in Step 1 by their actual frontage/width;

(3) Computed the Comps' average front foot value to be $2,969; [8]

(4) Determined the front foot value of their own land to be $92,047 (by multiplying the Comps' average front foot value of $2,969 by the actual frontage/width (31) of their land); [9]

(5) Adjusted their land's front foot value to account for differences between their land and the Comps ($92,047–$29,706).[10]

(*See* Cert. Admin. R. at 53–56, 97–115, 132–40, 198–212.) The Indiana Board determined the analysis lacked probative value because six of the Comps' sales prices were not reliable indicators of those properties' market value-in-use.[11] (*See* Cert. Admin. R. at 35–36.) The Indiana Board also explained that in the two instances where the Comps' sales prices were indicative of those properties' market value-in-use, the McKeemans quantification of the differences between those properties and their own land simply did not indicate that their assessment was too high.[12] (*See* Cert. Admin. R. at 36–37.)

---

6. Presumably, the McKeemans valued their land at $62,341 per parcel and, therefore, their total land value would have been $124,682.

7. The McKeemans explained that the sales data was primarily derived from a web-based Geographic Information System (GIS) for Steuben County. (*See* Cert. Admin. R. at 54, 76, 97–115.)

8. In making this computation, the McKeemans excluded Comps 4 and 8 because they believed these properties were not truly comparable to their own. (*See* Cert. Admin. R. at 54.) Thus, the Comps' average front foot value reflects an average front foot value of eight properties, not ten.

9. $2,969 multiplied by 31 is $92,039, not $92,047.

10. While the McKeemans explained that the differences between their land and the Comps included, among other things, the accessibility to paved roads, the location of the dwellings on the properties, and their proximity to the Lake James Christian Assembly, the McKeemans did not describe how they supported the value differences at $29,706. (*See* Cert. Admin. R. at 56, 140, 211–12.)

11. More specifically, the Indiana Board explained that the McKeemans provided insufficient details regarding both the court ordered sale of Comps 2 and 3 as well as the two sales transactions concerning Comps 5 and 6. (*See* Cert. Admin. R. at 35–36.) The Indiana Board also explained that the McKeemans' valuations of Comps 9 and 10 were unreliable because instead of allocating a portion of the total sales price to each property, they merely valued Comp 9 consistent with its 2006 land assessment and assigned the entire sales price to Comp 10 (minus the value of improvements and the assessed value of Comp 9). (*See* Cert. Admin. R. at 36.)

12. The Indiana Board explained that despite certain deficiencies in the McKeemans' quantification, the results suggested that Comp 5, a property located on an unpaved road without a garage similar to one of the McKeemans' parcels, had sold for an abstracted front foot value much higher than that assigned to the McKeemans' land. (*See* Cert. Admin. R. at 36–37.)

On appeal, the McKeemans contend that the Indiana Board erred in concluding that their sales comparison analysis lacked probative value because the Indiana Board relied on the Assessor's mistaken claim that Comp 10 was not in their neighborhood.[13] (*See* Oral Arg. Tr. at 38–39; Pet'rs' Br. at 3–5.) Although the Indiana Board's final determination indicates that the Assessor claimed Comp 10 was not in the McKeemans' neighborhood, it does not indicate whether the Indiana Board relied on the Assessor's erroneous claim. (*Compare* Cert. Admin. R. at 29 *with* 31–38.) Nonetheless, even if the Indiana Board had relied on the Assessor's mistaken claim, that alone would not warrant a reversal of the Indiana Board's final determination. Indeed, the Indiana Board's final determination explained that Comps 2 through 6, and Comps 8 through 9, lacked probative value for reasons unrelated to the Assessor's erroneous claim. *See supra* notes 8, 11. Moreover, the Indiana Board explained that the McKeemans valuation of the remaining Comps, Comps 1 and 7, also failed to demonstrate that their assessment was too high. *See supra* note 12. Consequently, the McKeemans have not shown that the Indiana Board erred in concluding that their sales comparison analysis lacked probative value.

## CONCLUSION

For the foregoing reasons, the Indiana Board did not err in upholding the McKeemans' 2006 assessment. Accordingly, the final determination of the Indiana Board is AFFIRMED.

---

**13.** The McKeemans have also argued that the Indiana Board should have considered sales data that was not contained within their sales comparison analysis because that data was more reliable. (*See* Pet'rs' Br. at 25.) The McKeemans, however, bore the burden of establishing the invalidity of their assessment, not the Indiana Board. *See O'Donnell v. Dep't of Local Gov't Fin.*, 854 N.E.2d 90, 95 (Ind.Tax Ct.2006).