ATTORNEY FOR PETITIONER:
**JAMES. K. GILDAY**
GILDAY & ASSOCIATES, P.C.
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**ANDREW T. GREIN**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED

Mar 03 2017, 2:24 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| | | |
|---|---|---|
| 6787 STEELWORKERS HALL, INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 49T10-1503-TA-00007 |
| | ) | |
| JON M. SNYDER, ASSESSOR OF PORTER COUNTY, | ) | |
| | ) | |
| Respondent. | ) | |

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**March 3, 2017**

WENTWORTH, J.

6787 Steelworkers Hall, Inc. ("Local 6787") appeals the Indiana Board of Tax Review's denial of its applications for a charitable or educational purposes property tax exemption for the 2008 and 2010 tax years (the "periods at issue").[1]  Upon review, the Court affirms the Indiana Board.

---

[1]  Portions of the certified administrative record are confidential.  Accordingly, the Court will only provide that information necessary for the reader to understand its disposition of the issues presented.  See generally Ind. Administrative Rule 9.

**FACTS AND PROCEDURAL HISTORY**

Local 6787, an affiliate of the United Steelworkers of America, is a labor union that is owned by approximately 3,400 employees of ArcelorMittal's Burns Harbor steel mill (i.e., the members).[2] (See Cert. Admin. R. at 916, 1307, 1311, 1315, 1322, 1324-25.) Local 6787 was organized as a domestic not-for-profit corporation in 1967 and is recognized by the Internal Revenue Service as a 501(c)(5) organization. (See Cert. Admin. R. at 917-24, 1318-21.) Local 6787's By-laws state its objectives:

> First. To unite in [Local 6787], regardless of race, creed, color or nationality, all working men and working women who are members of the United Steelworkers of America (hereinafter referred to as the "International Union") and who are within the jurisdiction of [Local 6787].
>
> Second. To establish through collective bargaining, adequate wage standards, shorter hours of work, and improvements in the conditions of employment for workers in [the] industry.
>
> Third. To engage in educational, legislative, political, civic, social, welfare, community and other activities; to advance and safeguard the economic security and social welfare of workers in [the] industry, the International Union, its Local Unions and the free labor movements of the United States, Canada and the world; to protect and extend our democratic institutions and civil rights and liberties; and to perpetuate and extend the cherished traditions of democracy and social and economic justice in the United States, Canada and the world community.
>
> Fourth. To take all steps and actions consistent with the Constitution and policies of the International Union and these Bylaws, to implement and carry out the objects, rights, activities and responsibilities of this organization and the International Union.
>
> Fifth. [To] . . . affiliate with the appropriate central and local bodies chartered by the Federation and with all district and subdistrict bodies of the United Steelworkers of America.
>
> Sixth. [To] . . . establish a better civic and political relationship

---

[2] ArcelorMittal, the largest steel company in the world, owns the Burns Harbor facility, a fully integrated steel mill. (See Cert. Admin. R. at 913-15, 1313-14.)

> within the Burns Harbor Community. It will help to build the image of our [Local 6787], the United Steelworkers of America, and the trade labor Union as a whole in this new community.

(Cert. Admin. R. at 931-32.)

During the periods at issue, Local 6787 owned a 12,000 square foot Union Hall and a 22,000 square foot Meeting Hall situated on 20 acres of land in Porter County, Indiana. (Cert. Admin. R. at 322-24, 1326-27, 1473-74, 1540-42.) The Porter County Assessor assigned the property a total assessed value of $3,554,800 in 2008 and $4,955,300 in 2010. (Cert. Admin. R. at 322-25, 660.) Local 6787 filed exemption applications for 2008 and for 2010 with the Porter County Property Tax Assessment Board of Appeals (PTABOA) claiming that its property qualified for an exemption because it was used for both charitable and educational purposes. The PTABOA denied both exemption applications.

Local 6787 sought review of the denials with the Indiana Board. In November of 2013, the Indiana Board conducted a two-day hearing during which Local 6787 offered forty-nine exhibits and the testimony of several witnesses to demonstrate that it used its property for charitable and educational purposes during the periods at issue. For instance, Peter Trinidad, the vice-president of Local 6787, explained that Local 6787, as the "exclusive bargaining agent" for its members, fulfilled the charitable and educational objectives set forth in its By-laws by negotiating and enforcing basic labor agreements (the BLAs) with ArcelorMittal. (See Cert. Admin. R. at 1306, 1308, 1330-32.) Local 6787's witnesses also explained that the BLAs satisfied the needs and human wants of Local 6787's members by implementing several targeted policies, procedures, and benefits such as:

3

1) employment security measures that specifically included layoff minimization plans (LMPs);[3]

2) economic security policies that set forth, among other things, certain hiring preferences, wage expectations, specialized benefits for active duty members and their families, alternative working schedules, and several grievance procedures;

3) safety initiatives that included the right to refuse unsafe work without repercussion, the right to participate in all accident investigations, and the provision of vouchers for work boots;[4]

4) civil rights initiatives designed to help Local 6787's members identify and prevent workplace harassment on the basis of specifically enumerated protected classes;

5) the Employee Assistance Program (the EAP)[5] and other wellness events for the benefit of Local 6787's members, their families, and even the general public; and

6) the provision of job-specific training, specialized training to develop union leadership skills, annual tuition reimbursements, and several other educational opportunities that were facilitated by the company-funded Institute for Career Development (the ICD).[6]

(See, e.g., Cert. Admin. R. at 1329-57, 1363-68, 1376-80, 1420-47, 1688-90, 1728-38,

---

[3] For example, ArcelorMittal and Local 6787 created an LMP in 2008 that prevented 2,000 of Local 6787's members from being laid off and likely staved off the shuttering of the Burns Harbor facility. (See Cert. Admin. R. at 1377-1412; Confd'l Cert. Admin. R. at 145-93.)

[4] Local 6787's emphasis on the safety and the overall well-being of its members made the Burns Harbor facility ArcelorMittal's safest domestic steel mill. (See Confd'l Cert. Admin. R. at 229-366; Cert. Admin. R. at 1553-73.)

[5] For purposes of the EAP, which was funded by ArcelorMittal and primarily conducted offsite, Local 6787 contracted with an independent third party to perform interventions and provide confidential free health counseling for its members and their families. (See Cert. Admin. R. at 1334, 1633-61; Confd'l Cert. Admin. R. at 377-92.)

[6] The ICD arranged for the provision of a wide variety of educational opportunities that were intended to lower the stress levels of Local 6787's members and provide them with "portable" skills. (See Cert. Admin. R. at 989, 1422-23.) For instance, Local 6787's members were able to take GED preparation classes, woodworking classes, jewelry-making courses, plumbing or electrical wiring classes, and Ivy Tech culinary courses. (See, e.g., Cert. Admin. R. at 989-1119, 1421-36, 1714-25.)

1744-51, 1804-06.) (See also generally Confd'l Cert. Admin. R. at 1-144.)

Furthermore, Local 6787 claimed that its charitable and educational activities relieved the human wants and needs of its members as well as those of the greater public. (See, e.g., Cert. Admin. R. at 1333.) In support of this claim, Local 6787 presented a Civic Engagement and Community Support Report stating that its provision of specialized union activities and educational opportunities benefited the Burns Harbor Community by making its members "model citizens" who were "[b]etter educated, more informed, and more socially responsible than the general population," as evidenced by their active involvement in charities and municipal volunteer positions, coaching of youth sports, and regular church attendance. (See Cert. Admin. R. at 1149, 1577-83.) (See also generally Cert. Admin. R. at 1144-1207.) Local 6787 also submitted an Economic Impact Report indicating that its presence in Porter County "contributed to high wages in nonunion industries . . . as well as to less inequality generally and a larger middle class[.]"[7] (See Cert. Admin. R. at 1590-91, 1594.) (See also generally Confd'l Cert. Admin. R. at 367-76.)

Local 6787 provided testimony that it also relieved the human wants and needs of its retirees by allowing them to hold monthly meetings in the Meeting Hall free of charge so that they could "deal with social, economic, educational, legislative[,] and political developments" and "fight for the preservation of things like social security and the shared values of steelworkers." (See Cert. Admin. R. at 1611-12, 1616.) Moreover,

---

[7] Furthermore, the Economic Impact Report provided that Local 6787's members: 1) generated about $195 to $260 million in additional income when compared to nonunion employees; 2) increased Porter County's income tax base by about $1 to $1.3 million; 3) increased the State's income tax base by about $13 million; and 4) caused a significant amount of new spending in the community. (See Cert. Admin. R. at 1594-96, 1599-1602; Confd'l Cert. Admin. R. at 369-72.)

the testimony provided that Local 6787 often allowed other charitable organizations, such as the American Red Cross or the United Way, to use the Meeting Hall free of charge and that its members regularly donated to charities, with their charitable donations totaling about $800,000 during the periods at issue. (See Cert. Admin. R. at 1333, 1415-16.) (See also Cert. Admin. R. at 1270-81.)

Based on its evidentiary presentation, Local 6787 claimed that the Union Hall qualified for a 100% exemption because it was used exclusively for the charitable purpose of conducting Local 6787's day-to-day union activities. (See, e.g., Cert. Admin. R. at 1298, 1326, 1473-74.) In addition, Local 6787 asserted that its Meeting Hall qualified for a predominate use exemption because it was used 74.4% of the time in 2008 and 67.2% of the time in 2010 for exempt purposes (e.g., union-related charitable/educational events and non-union related charitable events) in relation to its use for non-exempt purposes (e.g., wedding receptions, balls, and banquets) during the periods at issue. (See, e.g., Cert. Admin. R. at 1258-64, 1299, 1765-97.) Moreover, Local 6787's financial secretary explained how its income and expense data showed that it derived no profit from its property's non-exempt uses during the periods at issue. (See Cert. Admin. R. at 1797-1803; Confd'l Cert. Admin. R. at 393-95.)

The Assessor responded that he had no dispute with Local 6787's factual presentation, but he disagreed with its legal conclusions. (See Cert. Admin. R. at 1302-03.) The Assessor maintained that although Local 6787's use of its property was "very notable and very desirable," the few instances when its activities conferred a charitable or educational benefit to the community at large were merely "collateral." (See, e.g., Cert. Admin. R. at 1304-05, 1504-09, 1523, 1533-34.) Consequently, the Assessor

6

asserted that Local 6787's use of its property was not "charitable" or "educational" within the statutory meaning of those words because its activities were designed primarily to benefit its members. (See Cert. Admin. R. at 1303-06.)

On January 16, 2015, the Indiana Board issued its final determination explaining that Local 6787's charitable uses of its property were confined to the occasions that it 1) allowed charitable organizations to use the Meeting Hall free of charge; 2) held wellness events for the public; and 3) donated to charities or encouraged its members to do so. (See Cert. Admin. R. at 117, 144 ¶¶ 82-84.) In contrast, Local 6787's provision of other union-related activities, specifically its negotiation and implementation of the BLAs' employment and economic security measures as well as certain healthcare, training, and educational initiatives, were not exempt "charitable" or "educational" uses. (See Cert. Admin. R. at 139-43 ¶¶ 72-80, 145 ¶ 86, 147 ¶¶ 91-92.) Indeed, the Indiana Board found these activities were ineligible "fringe compensation benefits of the BLA[s]" intended to benefit Local 6787's members, conferring nothing more than "incidental" benefits to the public, and pursued for self-interest rather than for altruistic or philanthropic motives. (See Cert. Admin. R. at 139-43 ¶¶ 68-80, 145-47 ¶¶ 87-93.) The Indiana Board further explained that Local 6787's evidentiary presentation failed to show how its emphasis on safety and civil rights were "charitable" under the charitable purposes exemption. (See Cert. Admin. R. at 144-45 ¶ 85.) The Indiana Board therefore determined that Local 6787 failed to show that its property was used, either exclusively or predominately, for charitable and educational purposes during the periods at issue. (See Cert. Admin. R. at 147-49 ¶¶ 94-97.)

On March 2, 2015, Local 6787 initiated this original tax appeal. The Court heard

oral argument on December 11, 2015.  Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity.  Hubler Realty Co. v. Hendricks Cnty. Assessor, 938 N.E.2d 311, 313 (Ind. Tax Ct. 2010).  Accordingly, Local 6787 must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or unsupported by substantial or reliable evidence.  See IND. CODE § 33-26-6-6(e)(1)-(5) (2017).

## LAW

The charitable and educational purposes exemptions provide that "[a]ll or part of a building is exempt from property taxation if it is owned, occupied, and used . . . for educational . . . or charitable purposes."  IND. CODE § 6-1.1-10-16(a) (2008).  The exemptions also extend to the land on which an exempt building is situated and the personal property contained therein.  See I.C. § 6-1.1-10-16(c), (e).  When a taxpayer uses its property for exempt and non-exempt purposes, as here, the taxpayer must demonstrate that it owned, occupied, and predominately used its property for one or more exempt purposes during the relevant periods at issue to qualify for exemption. See, e.g., Indianapolis Osteopathic Hosp., Inc. v. Dep't of Local Gov't Fin., 818 N.E.2d 1009, 1014 (Ind. Tax Ct. 2004), review denied; IND. CODE § 6-1.1-10-36.3(a) (2008) (defining "predominate use" as more than 50% of a property's total use).

8

**ANALYSIS**

On appeal, Local 6787 asserts that the Indiana Board's final determination must be reversed for two reasons. First, it claims that the Indiana Board's final determination is "in derogation of a 150 year old Supreme Court decision" and is therefore contrary to law. (See Pet'r Br. Supp. Pet. Judicial Review ("Pet'r Br.") at 21-43.) In addition, Local 6787 claims that the Indiana Board's final determination is not supported by substantial evidence. (See Pet'r Br. at 21-22, 43-46.)

**I.**

Local 6787 claims that the Indiana Board's finding that most of its union-related activities were "fringe benefits," not exempt charitable and educational activities, is contrary to law because it was based on the faulty legal premise that its services are targeted towards its membership and confer no public benefit. (See, e.g., Pet'r Br. at 31-33, 41-42; Pet'r Reply Br. at 10-13.) To support its claim, Local 6787 primarily relies on the following excerpt from an 1865 Indiana Supreme Court case:

> [i]t is not essential to charity that it be universal. That an institution limits the dispensation of its blessing to one sex, or to the inhabitants of a particular city or district, or to the membership of a particular religious or secular organization does not deprive it of the character of a charitable institution.

(Pet'r Br. at 31 (quoting City of Indianapolis v. Grand Master, etc., of Grand Lodge of Indiana, 25 Ind. 518, 522 (1865) (emphases added)).) Accordingly, Local 6787 explains that the Supreme Court expressly recognized that real property of "member-centric" organizations is eligible for exemption and the Indiana Board's "new test for member-centric charities" directly contravenes this well-established caselaw. (See Pet'r Reply Br. at 11-12; Oral Arg. Tr. at 26.)

9

In Grand Master, the Supreme Court considered whether a "benevolent corporation" was a "charitable institution" eligible for exemption under a statute that was markedly different from the one at issue here. See Grand Master, 25 Ind. at 519-22. Specifically, the statute in Grand Master exempted from property taxation "'every building erected for the use of any benevolent or charitable institution'" rather than the narrower exemption provided to buildings that are owned, occupied, and used for charitable purposes under the statute effective for the periods at issue. Compare id. at 519 (emphasis added and citation omitted) with I.C. § 6-1.1-10-16(a). Consequently, the taxpayer's status as a "benevolent corporation" was dispositive in the Grand Master case, but is not relevant to the exemption statute at issue here. Furthermore, although there is Indiana authority that fraternal beneficiary associations are like benevolent corporations, nothing in the Grand Master case or elsewhere indicates that the features, functions, or activities of labor unions, like Local 6787, are akin to benevolent corporations for purposes of the charitable and educational exemptions. See, e.g., Bauer v. Samson Lodge, No. 32, K. of P., 1 N.E. 571, 574-75 (Ind. 1885) (recognizing that fraternal beneficiary associations have features similar to both insurance companies and benevolent organizations (i.e., charities)); Fraternal Order of Eagles No. 3988, Inc. v. Morgan Cnty. Prop. Tax Assessment Bd. of Appeals, 5 N.E.3d 1195, 1199-1202 (Ind. Tax Ct. 2014) (recognizing that the fraternal beneficiary exemption provided under Indiana Code § 6-1.1-10-23 is separate and distinct from the charitable and educational purposes exemptions provided under Indiana Code § 6-1.1-10-16). Accordingly, the Court finds that the Indiana Board did not err when it found Grand Master was not binding precedent for the "member-centric" organization of Local 6787.

10

See, e.g., Tannins of Indianapolis, LLC v. Indiana Dep't of State Revenue, 6 N.E.3d 511, 512 (Ind. Tax Ct. 2014) (stating that when a taxpayer seeks an exemption, it bears the burden of proof, and the Court strictly construes any ambiguities in favor of taxation). Consequently, Local 6787 has not demonstrated that the Indiana Board's final determination is contrary to law.

**II.**

Local 6787's second claim is that the Indiana Board's final determination must be reversed because it is not supported by substantial evidence. Local 6787 maintains that it submitted probative evidence demonstrating that it has both charitable and educational purposes, that it engaged in activities that fulfilled those purposes, and "[i]ts evidence went unrebutted, and in almost every material sense, was accepted by the [Indiana] Board." (Pet'r Br. at 20-21.) (See also Pet'r Br. at 21-31, 36-46.) Consequently, Local 6787 claims that the Indiana Board "committed reversible error when it found that [Local 6787] did not make a prima facie case; did not find that the Assessor failed to rebut [its] prima facie case; and decided that Local 6787 is not exempt from property taxes." (Oral Arg. Tr. at 67 (emphases added).)

When the Court reviews a final determination of the Indiana Board, it may neither reweigh the evidence presented nor judge the credibility of the witnesses who testified at the Indiana Board hearing. See Freudenberg-NOK Gen. P'ship v. State Bd. of Tax Commr's, 715 N.E.2d 1026, 1030 (Ind. Tax Ct. 1999), review denied. Rather, the Court defers to the factual findings that are supported by substantial evidence and reviews any questions of law arising from those findings de novo. Cedar Lake Conference Ass'n v. Lake Cnty. Prop. Tax Assessment Bd. Appeals, 887 N.E.2d 205, 207 (Ind. Tax

11

Ct. 2008), review denied. Here, the certified administrative record shows that Local 6787's activities primarily benefitted its members and that its property was not used like a benevolent corporation during the periods at issue. Accordingly, the Court finds that the Indiana Board's factual findings are supported by substantial evidence. See DeKalb Cnty. Assessor v. Chavez, 48 N.E.3d 928, 931-32 (Ind. Tax Ct. 2016) (providing that the Indiana Board's factual findings are supported by substantial evidence (i.e., more than a scintilla and less than a preponderance) if a reasonable person could view the certified administrative record in its entirety and find enough relevant evidence to support the findings). Moreover, to the extent Local 6787 is simply asking the Court to reweigh the evidence, the Court declines. Indeed, Local 6787 has not shown that the Indiana Board abused its discretion, (i.e., it misinterpreted the law or issued a final determination clearly against the logic and effect of the facts and circumstances before it), in concluding that its property was not predominately used for charitable or educational purposes during the periods at issue. See Hubler Realty, 938 N.E.2d at 315 (providing that the Court will not reweigh evidence absent an abuse of discretion). Consequently, the Assessor failed to demonstrate that the Indiana Board's final determination is not supported by substantial evidence.

## CONCLUSION

For the above-stated reasons, the final determination of the Indiana Board is AFFIRMED.

12